## McCartney v. The State.

Upon the trial of a prisoner on an indictment for forgery in passing a counterfeit bank-bill, the Court allowed a witness to state, in answer to a question of the prosecuting attorney, the names of persons who were competent judges of the genuineness of bank-bills. *Held*, that there was no error in this.

Upon the trial of such an indictment the state may prove, in order to show the defendant's criminal intent, that about the time the bill was passed, he uttered other counterfeit bills on the same bank and on other banks; and the fact that indictments against the defendant are pending, or have been tried, for the passing of such other notes, will not affect the admissibility of the evidence.

The state may also prove what the defendant said at the time of passing the bill described in the indictment, in regard to it.

At the trial upon such an indictment, the Court instructed the jury that if they were satisfied that the defendant uttered in payment and put away the note described in the indictment; that it was forged and false, and that the defendant knew it to be so, and put it upon the person named in the indictment, with intent to defraud him; no other proof of the ex-

May Term,
1852.

McCartney
v.
The State.

Friday,
May 28.

istence of the bank upon which it purported to be, was necessary. *Held,* that the instruction was correct.

ERROR to the *Marion* Circuit Court.

PERKINS, J.—Indictment for forgery. Conviction in the Circuit Court.

The points made are:

1. Whether the Court erred in refusing to quash the indictment on the ground that it does not charge that the forged bank-bill, alleged to have been passed, was passed as a true one. There was no error in refusing for this reason to quash, as the indictment does charge the bill to have been uttered and paid as true.

2. Whether the Court erred in permitting the prosecuting attorney to ascertain from a witness on the stand the names of persons who were competent judges of the genuineness of bank-bills. There was no error in this.

3. Whether the Court erred in permitting proof on the trial, to show knowledge on the part of the defendant of the falsity of the bill described in the indictment, that, on the day said defendant passed the bill, and on the day following, he passed to other persons counterfeit bills on the same and other banks, for the passing of which other indictments had been found, some of which were pending, and on one of which he had been tried and acquitted. The law is well settled that the uttering of other counterfeit notes of the same kind with that charged in an indictment, and about the time that it was passed, may be given in evidence, on the trial of the indictment, to prove guilty knowledge. 1 Russ. on Cr. 85. 2 id. 384, 697. We can see no reason why the fact that indictments had been found, or that convictions or acquittals had been had upon them, should affect the admissibility of such utterings. Neither the indictments, nor the records of conviction or acquittal, need be, nor, it strikes us, (though the point is not for decision in this case,) should be, given in evidence; but the facts and attendant circumstances alone of the utterings as though no indictments had been found. Nor do we think that the fact that some of these

other counterfeit or false bills purported to be upon banks different from that on which the indictment being tried was based, should render the evidence inadmissible. It might affect its force, but not, we think, its competency. The fact that a person had passed one counterfeit note on the state bank of *Indiana* about the time of his passing one such note on the state bank of *Ohio* might tend, but in a very slight degree, to prove that the person knew the *Ohio* note to be counterfeit; but if a person should pass several counterfeit notes on the state bank of *Indiana* about the time he should pass, or be in possession of, counterfeit notes on the *Ohio* or any other bank, every one would say, according to the usual rules of judging of human conduct and intentions, that it conduced strongly to show that the party knew all his counterfeit paper to be such, and that he was making a business of passing such paper. We think the evidence in question admissible to prove guilty knowledge, but its weight with the jury would, of course, depend on the circumstances of the case. See *United States* v. *Roudenbush*, 1 Bald. C. C. Rep. 514.—*State* v. *Houston*, 1 Bailey, 300.—*Spencer* v. *The Commonwealth*, 2 Leigh, 751.—*State* v. *Petty*, Harper, 59.

4. Whether the Court erred in permitting proof of what the defendant said at the time of passing each of said notes, in regard to it. There was no error in this. His declarations were a part of the *res gestæ.*

5. Whether the Court erred in giving the following instruction to the jury:

"If the jury are satisfied that the defendant uttered in payment, and put away, the note described in the indictment; that it was forged and false; and that the defendant knew it to be so, and put it upon the person named in the indictment with intent to defraud him, no other proof is necessary of the existence of the bank upon which it purported to be."

Our statute says, p. 967, s. 28, that every person who shall utter or pay, &c., " any false, forged, or counterfeit bank-note," &c., shall be deemed guilty of forgery. The

note would certainly be false if there was no such bank in existence as that on which it purported to be. This point, however, is settled by authority in accordance with the instruction in question. *The People* v. *Peabody*, 25 Wend. 472.—Note to R. S. p. 966.—*United States* v. *Mitchell*, 1 Bald. C. C. Rep. 366. The Court committed no error.

*Per Curiam.*—The judgment is affirmed with costs.

*R. L. Walpole*, for the plaintiff.

*D. S. Gooding*, for the state.

