## 48174. WILLIAMS v. THE STATE.

EBERHARDT, Presiding Judge. The narcotics squad of the Crime Control Unit of the Muscogee County Sheriff's office had information leading them to believe that a Stonewall Jackson, who lived in an apartment complex, was engaged in the drug traffic. His apartment was placed under surveillance for approximately a week, and an undercover man who was working with the narcotics squad arranged for a delivery of drugs to an officer (who would appear in plain clothing) for $2,000. Members of the Crime Control Unit went to the apartment complex about 7:30 p.m. for making the transaction. They saw a white Volkswagen, which they had associated with Jackson, stopped it and found others in it. They had required two occupants to get

out, stand with their hands on top of the vehicle, and be patted down to see whether they were armed. While this was being done the appellant, Williams, drove up behind the Volkswagen, stopped, suddenly backed up, turned around and started out in the opposite direction at a speed which the officers deemed to be excessive for the area. He was in a red Torino, which the officers had seen parked in front of the Stonewall Jackson apartment, and wore a hat similar to that which Jackson customarily wore. The officers reasoned that Jackson was in the car and, having seen a sheriff's office car with a blue dome light standing nearby, was trying to get away. The sheriff's office had a van truck parked near the entrance which could be used for blocking vehicles that might try to escape. The deputies were signaled to block the entrance through which the red Torino would leave, and they did.

A deputy sheriff identified himself to the defendant and told him to get out of the car, which he did. A pistol was seen lying on the back seat. A deputy sheriff looked in the back area of the car to see whether somebody might be lying on the seat or the floor. He saw a grocery sack on the floor behind the front passenger seat. The top of the sack was open and in it was a white sack with "Dairy Queen" on it. It was visible, as were glassine or cellophane bags containing a green substance which the deputy, from his years of experience on the narcotics squad, concluded to be marijuana. He reached in and took the grocery bag with its contents, which were later sent to the crime laboratory for examination and analyzing. Upon analysis it was found that the sack contained marijuana, heroin and LSD.

Defendant was indicted for possession of these three drugs, which is prohibited under the Uniform Narcotics Act.

Defendant moved to suppress the items taken from his car as evidence in his trial, and the motion was denied.

On the trial he made an unsworn statement in which he admitted ownership of the car and stated that nobody else operated it. He was alone on the occasion of his arrest. He denied any knowledge of the drugs and stated that he had never seen them until the officer who had removed the grocery bag from the car asked him about them. He lived in the apartment complex and parked his car there.

From a conviction and sentence he appeals, enumerating as error the denial of his motion to suppress, the allowing of testimony relative to a pistol which the officers found lying on the back seat

of the car, admission of evidence as to the value of the drugs, the court's charge on flight, failure to charge on circumstantial evidence, failure to define possession, and to the overruling of his motion for new trial, as amended. *Held:*

1. We find no error in the denial of the motion to suppress. It appears that when the officers stopped the defendant for ascertaining his identification, they saw "in plain view" the grocery bag on the floor of the rear seat, and could see in the bag substance which, through experience, they were able to identify as marijuana. Consequently no search warrant was required for taking the bag and its contents from the car. Ker v. California, 374 U. S. 23 (83 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234 (1) (88 SC 992, 19 LE2d 1067); Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564); *Hood v. State,* 229 Ga. 435 (192 SE2d 154); *Gates v. State,* 229 Ga. 796 (194 SE2d 412); *Lowe v. State,* 230 Ga. 134 (2) (195 SE2d 919); *Moody v. State,* 126 Ga. App. 108 (189 SE2d 889); *Scott v. State,* 122 Ga. App. 204, 206 (176 SE2d 481). No *search* was required and none is involved here.

Moreover when all of the evidence is considered it will be seen that the officers had probable cause to believe that contraband (illegal drugs) would be found in the automobile, and in this situation it is proper to apply the rule relative to searching automobiles exemplified in *Johnson v. State,* 126 Ga. App. 93, 94 (189 SE2d 900); *Anderson v. State,* 123 Ga. App. 57, 59 (179 SE2d 286); Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543, 39 ALR 790); Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419); Draper v. United States, 358 U. S. 307 (79 SC 329, 3 LE2d 327), and others of like tenor. The circumstances existing at the time were highly suspicious, leading to a stopping of the defendant as he tried to leave the area. *Craft v. State,* 124 Ga. App. 57 (3) (183 SE2d 371). If a search had been necessary to discover the contraband, a warrantless search would have been reasonable.

The crime of possessing marijuana was being committed in the presence of the officers, and the arrest of the defendant without a warrant was permissible. Code § 27-207. Moreover, if he were not arrested there was likelihood that the defendant would escape and there would be a failure of justice. *Bloodworth v. State,* 113 Ga. App. 278 (147 SE2d 833); *McEwen v. State,* 113 Ga. App. 765 (2) (149 SE2d 716).

A different result is not required because the officers may have

been looking for Stonewall Jackson, whom they had had under surveillance. They acted reasonably in stopping the defendant as he attempted to leave the parking area of the apartment complex in view of the suspicious action of the defendant in suddenly stopping when he came upon the officers who were shaking down other suspects, rapidly backed up, turned around and started to leave at a high speed. Although they had not previously known or suspected the defendant as being one engaged in the illegal drug traffic, or other illegal activity, they were entitled to stop him and ascertain his identity, and when contraband appeared in plain view of the officers they were authorized to arrest him and to seize the contraband.

The contents of an automobile are presumed to be those of one who operates and is in charge of it, and this applies particularly where the operator is also the owner, as here. *Watson v. State,* 93 Ga. App. 368 (1) (91 SE2d 832).

2. There was no error in allowing the officer to testify that a pistol was lying on the back seat, in plain view. *Hood v. State,* 229 Ga. 435, supra. It was a circumstance of the arrest. *Bridges v. State,* 227 Ga. 24 (3) (178 SE2d 861); *Morgan v. State,* 229 Ga. 532 (2) (192 SE2d 338). Furthermore, there was no proper objection to the evidence. *Scott v. State,* 229 Ga. 541 (192 SE2d 367); *Hendrix v. State,* 125 Ga. App. 327, 328 (187 SE2d 557).

3. There was no error in allowing the officer to testify from his knowledge gained as a member of the narcotics squad for several years as to the value of the drugs seized. While the value of the drugs is not a necessary ingredient which the state must prove, it can be helpful to the jury in the light of other circumstances in the evidence to know whether the quantity of drugs was inconsequential or substantial.

4. Error is enumerated on the failure of the court to charge, without request, on the matter of circumstantial evidence. A charge on this subject is required only when the case is wholly dependent upon circumstantial evidence. *DePalma v. State,* 228 Ga. 272 (1) (185 SE2d 53); *Walker v. State,* 226 Ga. 292 (11) (174 SE2d 440).

5. There was no error in failure of the court to define "possession" in the charge to the jury. This is a word well known and familiar to all laymen, and is in general use by them; they understand its meaning. It is so obvious until we cannot imagine the jury having any difficulty in applying it, or in having any doubt as to its meaning. *Thomas v. State,* 95 Ga. App. 699, 705 (99 SE2d 242); *Floyd v. State,* 58 Ga. App. 867 (2) (200 SE 207); *Spurlin v. State,*

222 Ga. 179 (6) (149 SE2d 315); *Anderson v. State,* 226 Ga. 35, 36 (172 SE2d 424). Moreover, there was no request for such a charge.

6. Under the facts surrounding the arrest of the defendant we find no error in the charge on flight. *Green v. State,* 127 Ga. App. 713, 714 (194 SE2d 678), and cits.

7. The general grounds of the motion for new trial are without merit. After a verdict of guilty has been returned, in passing on the defendant's motion for new trial the trial court and the appellate court are to afford the evidence that view which is most favorable to the state, for every presumption and every inference is in favor of the verdict. *Morgan v. State,* 77 Ga. App. 516, 517 (48 SE2d 681).

*Judgment affirmed. Pannell and Stolz, JJ., concur.*

ARGUED MAY 3, 1973 — DECIDED MAY 15, 1973.

*Grogan, Jones & Layfield, John C. Swearingen,* for appellant.

*E. Mullins Whisnant, District Attorney, Douglas C. Pullen,* for appellee.