**Robert W. HARE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1082S397.**

Supreme Court of Indiana.

Aug. 22, 1984.

Robert L. Sheaffer, Shelbyville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Robert W. Hare was found guilty by a jury in the Shelby Superior Court of the crime of robbery while armed with a deadly weapon, class B felony, and was sentenced to a term of eighteen (18) years by the trial judge.

The eleven issues presented for our review in this direct appeal are as follows: 1) error of the trial court in denying the defendant's motion to suppress items con-

fiscated from a hotel room and admitting a list of said items into evidence;

2) violation by the State of a motion *in limine;*

3) alleged improper in-court identification of the defendant by the victims;

4) denial of the defendant's motion for a change of venue from the county;

5) denial of the defendant's motion to suppress the testimony of Stephen Lux;

6) refusal of the trial court to give the defendant's tendered instructions No. 3 and No. 8;

7) admission into evidence of State's Exhibits No. 22 and No. 31 over the defendant's objections;

8) giving by the trial court of final instruction No. 8;

9) admission into evidence testimony concerning the defendant's past criminal conduct;

10) admission into evidence by a State's witness the street value of drugs; and

11) admission of certain testimony involving the police investigation of a separate crime.

The facts tend to show that on or about December 2, 1980, William Arland was a pharmacist in a drugstore located in Shelbyville, Indiana. He observed defendant Robert Hare enter the store with a gun in his possession and demand from Arland that he, Hare, be given schedule II drugs. Arland showed the defendant the cabinet where the drugs were stored. The defendant subsequently instructed Arland to lie on the floor and then the defendant handcuffed Arland and bound his ankles with tape. He took drugs from a cabinet and money from the cash drawer. Meanwhile, Jeff Horstman, an employee of the drugstore, returned to the store after having delivered a prescription. Horstman saw the defendant armed with a gun and Arland on the floor. Defendant then told Horstman to lie on the floor and the defendant handcuffed Horstman and bound his ankles with tape.

Defendant was apprehended on January 2, 1981, incident to a police investigation of a separate crime. On January 2, 1981, the Castleton Police Department in a suburb of Indianapolis, in Marion County, Indiana, responded to a dispatch at the Bargain Barrel on East 82nd Street, where they were advised an officer had been shot during a robbery at said business. The police found that two police officers had been killed at said location and one of the robbers was fatally wounded in the incident. Officer Daniel Dunbar of the Castleton Police Department received a telephone call from an individual who stated that a suspect involved in the disturbance at the Bargain Barrel was at a nearby American Inn. The American Inn was a little over a mile from the Bargain Barrel. When police officers arrived at the hotel they heard a woman screaming, "They're running!", and he and other officers saw three individuals running from the building and ordered them several times to stop. After the individuals were apprehended, one of them requested that his dog be allowed to stay in the hotel room. Robert Hare was one of the individuals and the other two were his brother and his brother's wife. It was Hare's brother who asked that the dog be allowed to stay in the hotel room. The suspect then permitted Officer Dunbar to open the door of the room to allow the dog to enter. When Officer Dunbar opened the door, he observed, in plain view, a gun and a holster. He then transported the suspects to jail and obtained a search warrant to search the room. Officer James Freeman executed the search warrant and confiscated various weapons and drugs. It was later determined that one of the occupants of the room was the defendant, Robert Hare, and the others were Hare's brother and sister-in-law. Robert Hare's brother went by the name of Lamphire and was registered by that name in the motel. While executing the search warrant in the room occupied by these persons, the police seized a large quantity of drugs. Many of the drugs were of the same type taken from Arland during the robbery on December 2, 1980. They were also in a handbag

or satchel which one of the witnesses of the December 2, 1980 robbery had described the robbers as possessing. Arland was not able to identify any of the drugs as actually having come from his drugstore, but was able to state only that they were the same type of drugs taken from him on that date. A gun confiscated from the room matched the description given of the one used by the robber on December 2, 1980, and a key found in a briefcase in the room was confiscated. Because the handcuffs on Arland and Horstman had to be destroyed, it was impossible to say that this key definitely was the one that locked or unlocked those handcuffs. One of the police officers, however, testified that the key did fit the handcuff lock and appeared to trip the spring that would operate the lock in opening and closing it. Because of the condition of the locks caused by removing them from the victims, it was impossible to draw any further conclusions. Robert Hare told Stephen Lux, a cellmate, that he committed the robbery against Arland and Horstman, but that unknown to the police he was not alone when it was done, rather he had two accomplices. Stephen Lux testified to this at trial.

## I

Defendant claims the trial court erred by denying his motion to suppress items confiscated from the hotel room occupied by the defendant and others at the time of his arrest. At the time of his arrest, the police in the Castleton section of Indianapolis were investigating a robbery in which two police officers and one of the robbers were killed. They received a phone call from a resident of the American Inn nearby that a description of the robbers had been broadcast and she felt one of the suspects also resided at the American Inn. Officer Dunbar of the Castleton Police Department went to the hotel and heard a woman scream, "They're running!". He then saw three individuals running from the building and ordered them several times to stop. He apprehended them and took them into custody. One of them, who later turned out to be the defendant's brother, request-

ed that his dog be allowed to stay in the hotel room. Officer Dunbar then opened the door to the room to allow the dog to enter and noticed a gun and holster in the room. He then secured the room and obtained a search warrant before entering and confiscating the items found therein.

The trial court ruled that the items found in the room that were pertinent to this cause were properly admitted into evidence because the police had probable cause to obtain a search warrant and to seize the articles found therein. We agree. A police officer may, in appropriate circumstances and manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest at that time. *Taylor v. State*, (1980) 273 Ind. 558, 406 N.E.2d 247. However, even though probable cause to make an arrest may not exist at the time the investigation commences, this does not mean that probable cause to make a proper arrest may not develop during a legitimate investigation of a suspicious activity. *Fyock v. State*, (1982) Ind., 436 N.E.2d 1089; *Battle v. State*, (1981) Ind., 415 N.E.2d 39:

> "Probable cause exists when at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution and prudence to believe the defendant committed the criminal act in question."

Here, Officer Dunbar had probable cause to believe the defendant had committed the criminal act in Castleton. He was investigating the crime in which two police officers were killed when he received the call regarding the suspects from the citizen who resided at the American Inn. When he arrived at the hotel, he heard a woman screaming, "They're running!", and saw the three individuals, one of them the defendant, attempting to flee. Although it turned out that the defendant, Robert Hare, was not involved in the Castleton incident, it cannot be said the police did not have probable cause at that time to suspect that he was involved and to take him into

custody. Moreover, when Officer Dunbar saw a gun and holster in the room, he had probable cause to suspect that evidence of criminal activity was present, and sufficient probable cause to authorize a court to issue a search warrant. All of these facts within the knowledge of Officer Dunbar were in an affidavit presented to the court issuing the search warrant. Therefore, the trial judge had substantial basis for finding probable cause existed to believe the proposed search would result in the discovery of evidence of an offense. *Short v. State,* (1982) Ind., 443 N.E.2d 298; *McClain v. State,* (1980) Ind., 410 N.E.2d 1297.

▮▮▮ Defendant further complains about the court's action in admitting the State's Exhibit No. 28, which was a computer sheet listing items recovered from the search of the hotel room at the American Inn. Officer James Freeman, who executed the search warrant, testified that when he obtained the items recovered from the room he called the Records Department of Marion County Sheriff's Department to report the information according to the general practice. The set up in the records room was such that when the officer dictated the information regarding the items he seized into the records telephone, the facts were entered into a computer and later printed out from the computer. This printout formed State's Exhibit No. 28. Defendant objected to the admission of the exhibit by claiming the computer sheet was irrelevant to the issues and a proper foundation did not exist for its introduction into evidence. Although the defendant makes these claims regarding this exhibit, he fails to cite any authority in support of his contention that are relevant to the issue. The State's argument that he has thus waived the issue under Ind.R.P.App.R. 8.3(A)(7) has merit. Furthermore, a general objection that an exhibit is irrelevant without further explanation or giving of grounds for its lack of admissibility presents no issue on appeal. *O'Connor v. State,* (1980) 272 Ind. 460, 399 N.E.2d 364. Defendant's final objection to the admission of Exhibit No. 28 also lacks merit. He claims that the trial court erred by admitting the computer

sheet into evidence because it did not comply with the business records exception, and, therefore, a sufficient foundation was not established. The testimony of Officer Freeman was that he wrote a case report of the search and immediately telephoned the Records Department of the Marion County Sheriff's Department to report the information. This was entered into a computer and later printed out from the computer. There also was supporting testimony from Officer Freeman as to the items he obtained from the hotel room that were significant in this cause. The testimony shows that the entries on the computer sheet were put into the records in the regular course of business at or reasonably near the time of the happening of the event and the defendant's objections as to their supplying sufficient foundational requirements are without merit. *Allen v. State,* (1982) Ind., 439 N.E.2d 615; *Brandon v. State,* (1979) 272 Ind. 92, 396 N.E.2d 365.

## II

▮▮▮ Defendant claims the trial court erred by failing to sanction the State for an alleged violation of a motion *in limine.* A motion *in limine,* of course, is used prior to trial as a protective order against prejudicial questions and statements which might arise during trial. The trial court has inherent discretionary power to grant such a motion. *Norton v. State,* (1980) 273 Ind. 635, 408 N.E.2d 514; *Crosson v. State,* (1978) 268 Ind. 511, 376 N.E.2d 1136; *Lagenour v. State,* (1978) 268 Ind. 441, 376 N.E.2d 475. The granting of a motion *in limine* prior to trial does not consist of a final ruling upon the ultimate admissibility of evidence. It is meant to protect against potential prejudicial matter coming before the jury until the trial court has an opportunity to rule upon its admissibility in the context of the trial itself. No issue is raised on appeal, therefore, regarding an alleged violation of an *in limine* order. The question is not the violation of an *in limine* order, but the admissibility or lack thereof of the evidence presented at the time. Here, the defendant complains be-

cause one of the victims inadvertently mentioned "the Hare gang" during his testimony. This came from the victim while he was being cross-examined by defense counsel. The trial court determined that any prejudice by such a statement was minimal. Defendant also objects to the testimony of Officer Freeman concerning the defendant's relatives. Officer Freeman's testimony in regard to the defendant's relatives referred only to the fact that the defendant's brother and his wife were the other two individuals arrested with the defendant. These were simply statements of facts inherent in the very transaction involved here. They cannot be said to have been put into evidence merely to prejudice the defendant, and they do not present reversible error.

### III

■■■■ Defendant claims the trial court erred by permitting the in-court identifications of the defendant by victims William Arland and Jeff Horstman. The record shows that after the robbery the victims were shown approximately ten "mug" shots of potential suspects, but Mr. Arland was unable to identify the person who robbed the drugstore from said mug shots. On February 2, 1981, Arland was shown three photographs of two men and one female. Arland did identify the defendant as the individual who committed the robbery. Later Arland was shown a "mug" book which contained approximately ten photographs of suspects and Arland again identified the defendant. Apparently these latter ten photographs contained the photograph of the defendant that was included in the three photographs shown to Arland on February 2, 1981. Neither Arland nor Horstman ever wavered from their identification of the defendant on the photographic displays or on their identification of the defendant in person, particularly at trial. In a pretrial hearing based on the defendant's motion to suppress the evidence from the photographic identifications, the court suppressed the February 2, 1981 identification process as it was found to be suggestive. However, the court permitted both

witnesses to testify at trial and identify the defendant. An in-court identification is permissible despite a prejudicial pre-trial identification if it is apparent that the in-court identification was not the product of an unnecessarily suggestive confrontation and an independent basis for the in-court identification exists. It is necessary to show that the unnecessarily suggestive confrontation did not lead to an irreparable likelihood that the identification was erroneous or influenced by the improper confrontation. *Kusley v. State*, (1982) Ind., 432 N.E.2d 1337; *Harris v. State*, (1980) 273 Ind. 60, 403 N.E.2d 327. We have many times stated that the factors to be considered in determining whether there is independent basis for the in-court identification is the opportunity of the witness to observe the perpetrator, the lighting conditions, the witness' distance from the perpetrator and the witness' capacity to observe the perpetrator. Here, Arland testified that he observed the defendant enter the drugstore with a gun in his possession and demand that he be given Schedule II drugs. He described the clothing worn by the defendant and also stated that since the robbery occurred in the evening, the lights were on in the pharmacy. The evidence showed the defendant was in the store for some length of time and in a position where Arland could observe him as he took items from the drug cabinet. Horstman stated that when he returned to the drugstore he saw the defendant armed with a gun. He described the appearance of the defendant, clothing he was wearing, and the fact that he spoke with a "southern" accent. There was, therefore, sufficient evidence to support the trial court's finding that each in-court identification of the defendant had a basis independent from the suggestive pretrial photographic display of February 2, 1981. The witnesses were firm in their testimony that they observed the defendant committing the robbery in the drugstore and that they could identify the defendant in court as the one who perpetrated this act. The trial court did not err in permitting them to so testify.

## IV

 Defendant claims the trial court erred by denying him a change of venue from Shelby County based on publicity by the local newspaper. Incident to *voir dire* examination, the trial court held a hearing to determine the probability of existence of bias created by the newspaper publicity. Examination of the first jury panel revealed that many of the jurors indicated they had some knowledge of the case through the pretrial publicity. The trial court thereupon discharged the entire jury panel and had a new jury panel drawn. Defendant's trial jury was picked from the new panel. Defendant now asserts that community bias and prejudice existed to the extent that the trial court should have granted a change of venue from the county. The question of change of venue from the county lies within the sound discretion of the trial court. *Robinson v. State,* (1983) Ind., 446 N.E.2d 1287; *Underhill v. State,* (1981) Ind., 428 N.E.2d 759. The burden rests with the defendant to establish either the high probability or existence of such widespread bias in the community that an impartial jury cannot be obtained. *Haybron v. State,* (1979) 272 Ind. 190, 396 N.E.2d 891. Defendant does not show nor does he claim that the prospective jurors in the new panel had indicated they had preconceived notions of guilt which they were unable to set aside so as to base a verdict upon the evidence. *McReynolds v. State,* (1984) Ind., 460 N.E.2d 960; *Pine v. State,* (1980) Ind., 408 N.E.2d 1271, *reh. denied.* Neither are we furnished a transcript of the *voir dire* examination of the second jury panel so that we can determine the frame of mind of the jurors selected to try the defendant. Apparently the defendant asks us to presume that since a large number of those people on the first jury panel were aware of publicity on the cause, the second jury panel and perhaps all the citizens of the community also had such knowledge. The record does not disclose that this was true, nor does the defendant claim it was true in his arguments. He merely states there was a great deal of publicity that rendered it impossible for him to have a fair trial in that community. The State contends that the articles produced by the defendant from several newspapers merely mentioned the offense and did not exhibit a pattern of deep and bitter prejudice against this defendant throughout the community. We find no basis for concluding that the trial court abused its discretion to the extent that reversible error was committed by denying the defendant's motion for a change of venue. *Sage v. State,* (1981) Ind., 419 N.E.2d 1286.

## V

It is the defendant's contention the trial court erred by denying his motion to suppress the testimony of Stephen Lux. Lux testified that he was incarcerated in the Shelby County Jail at the same time as the defendant and that he, Lux, talked to the defendant there. The defendant told Lux that he was charged with the armed robbery of a drugstore and described to Lux the manner in which he executed the robbery. The robbery described was the one in trial here. Defendant told Lux that the police believed the defendant was the only person involved in the crime but that, in fact, two other persons were also involved. Defendant's only arguments for suppressing the statement of Lux are based on the holding in *United States v. Henry,* (1980) 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115:

> "By intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the government violated Henry's Sixth Amendment right to counsel."

 The situation here, however, bears no relationship to that expressed by the United States' Supreme Court in *Henry,* as there is no showing here that Lux was solicited by the State or any of its agents to purposely induce the defendant into making some incriminating statement. In fact, Lux testified to the opposite when he stated he had not been talked to by anyone representing the State prior to the time that the defendant voluntarily talked to him. After the defendant made the state-

ments to Lux, Lux contacted the prosecuting attorney and offered his testimony. Lux testified that the defendant voluntarily informed him of his involvement in this offense. There was no testimony by anyone to the contrary. The trial court accordingly did not err by denying the defendant's motion to suppress and permitting Lux to testify.

### VI

The results of a polygraph examination taken of the defendant were put into evidence pursuant to a stipulation by the State and the defense. The defense then tendered its final instruction No. 3 which was proposed to instruct the jury on how they were to consider a polygraph or lie detector examination pursuant to *Owens v. State*, (1978) 176 Ind.App. 1, 373 N.E.2d 913, adopting prerequisites set forth in *State of Arizona v. Valdez*, (1962) 91 Ariz. 274, 371 P.2d 894:

> "That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given."

■ Instruction No. 3 tendered by the defendant here was a proper instruction and should have been given by the trial court. *Owens v. State, supra.* We do note that the trial court here gave its final instruction No. 7 which instructed the jury generally that they were to ·determine the credibility of any witness and weigh each piece of evidence relative to its reasonableness and consistency with all other evidence. Although Instruction No. 7, of course, would apply to the polygraph testimony as well as all other evidence, because of the nature of polygraph examinations, the defendant's Instruction No. 3 was a proper instruction and should have been

given. We have held, however, that errors in the giving and refusing of instructions are harmless where a conviction is clearly sustained by all of the other evidence presented before the jury. *Battle v. State*, (1981) Ind., 415 N.E.2d 39; *Grey v. State*, (1980) 273 Ind. 439, 404 N.E.2d 1348; *Carter v. State*, (1977) 266 Ind. 196, 361 N.E.2d 1208, *cert. denied*, (1977) 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142; *Pinkerton v. State*, (1972) 258 Ind. 610, 283 N.E.2d 376.

Here, the defendant was positively identified by the two victims of the robbery, there was testimony of his own voluntary statement to a fellow prisoner, and other evidence that strongly pointed to this defendant as the perpetrator of the robbery. We therefore find that any error committed by the trial court in refusing the defendant's Instruction No. 3 was harmless.

■ Defendant also claims the trial court erred in refusing to give his tendered final Instruction No. 8. Defendant's tendered Instruction No. 8 was not a statement of the law, but rather a rambling dissertation to the jury regarding the problems and weaknesses of photo identification procedures that might be practiced by the police. The defendant asserts that the instruction is a proper one to give in that it quotes the U.S. Supreme Court in *Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The fact that certain language appears in an opinion does not necessarily make such language proper for a jury instruction. *Weekley v. State*, (1981) Ind.App., 415 N.E.2d 152. The court in *Simmons* was generally discussing photo identification procedures with witnesses to a crime, and the paragraphs submitted by the defendant were taken out of context of that opinion. It is not a proper instruction since it does not recite any law. A trial court is not obliged to give an instruction that is confusing, inordinately comments on a particular piece of evidence, or does not properly state the law. *Johnson v. State*, (1982) Ind., 435 N.E.2d 242; *Norton v. State* (1980) 273 Ind. 635, 408 N.E.2d 514. Defendant has,

therefore, presented no reversible error on this issue.

## VII

 The next issue raised by the defendant is the admission into evidence of State's Exhibit No. 22, a copy of a registration form used by the American Inn, and State's Exhibit No. 31, a key found in a briefcase in the hotel room. The registration form from the American Inn showing the defendant's brother had signed for the room supported testimony that this was the room from which the defendant, his brother and his brother's wife had fled. Defendant again claims this exhibit was irrelevant without pointing out any grounds or qualifications that make it irrelevant, and therefore presents no issue. *O'Conner v. State, supra.* He further claims that a photocopy was offered into evidence which was not the best evidence. He cites no authority nor presents any cogent argument in support of this contention and, thus, again presents no issue for our consideration. He finally contends that a proper foundation did not exist for the introduction of this exhibit since it did not satisfy the business records exception to the hearsay rule. The exhibit was sponsored, however, by Phyllis Lingenfelter, a bookkeeper at the American Inn, who testified she was responsible for the registration records and that this registration was taken from those records. Her testimony qualified the exhibit as a business records exception to the hearsay rule and was therefore properly admitted. *Crosson v. State, supra.*

 Exhibit No. 31 was a key found in a briefcase in the motel room. The locks on the handcuffs removed from the victims were damaged in the process of removing them and police were not able to testify conclusively that this key would fit the handcuffs to the extent that it would open and close them. The police testified, however, that the key would fit into the locks and when turning it would tend to activate the spring that locked the handcuffs. Defendant's objections to this exhibit were that proper chain of custody was not shown and that the exhibit was irrelevant. He makes no argument in his brief nor points out wherein a proper chain of custody was lacking and, therefore, has waived this issue. Furthermore, a general claim of irrelevancy does not present an issue on appeal. *O'Conner v. State, supra.* Evidence having some tendency to prove a material fact is relevant and a trial court is accorded wide latitude on ruling on its admission. *Pitman v. State,* (1982) Ind., 436 N.E.2d 74. The key was introduced for the purpose of connecting it to the handcuffs used by the defendant during the commission of this robbery. Although the testimony was not conclusive in tying it to the handcuffs, its probative value was explained by the police, and it cannot be said it did not have some tendency to prove a material fact relevant to the issues before the jury. Its admission was therefore not reversible error.

## VIII and IX

Defendant claims the court erred in permitting testimony concerning an unrelated robbery committed by the defendant in Terre Haute, Indiana and the giving of final instruction No. 8, which instructed the jury in the manner in which they were to use that evidence.

Prior to trial the defendant filed a motion *in limine* to prevent any testimony regarding any other robbery allegedly committed by him. The trial court granted the motion but later permitted Joseph Lugar, a pharmacist in Terre Haute, Indiana, to testify that on December 8, 1980, the defendant entered his drugstore in Terre Haute and demanded drugs from him. Since the defendant was unable to find the drugs himself, Lugar assisted him, placing various drugs into a sack in the defendant's possession as well as money from the cash drawer. Defendant then ordered Lugar and his employee to lie on the floor while the defendant handcuffed them and bound their ankles with tape. The handcuffs and tape were similar to those used on the victims in the instant case. Defendant was tried in Vigo County for the Terre Haute robbery

and was acquitted by the jury. All of the facts of the previous trial and acquittal were presented to the jury in the instant case. Lugar said he testified before that jury by absolutely identifying the defendant, and that he was certain as he testified in this cause that the defendant was the one who committed the robbery in Terre Haute. The testimony stated the employee was a very nervous person and did such a poor job of testifying before the Terre Haute jury that the issue of identification became confused and it was likely this was the reason the jury found the defendant not guilty there. Lugar nonetheless insisted that he was with the defendant for some period of time, was able to see him very clearly, and that he was certain the defendant was the person who committed that crime. The trial court permitted the testimony after instructing the jury that the testimony they were about to hear would be proof of another crime committed by the defendant, that it was admissible only to show intent, motive, purpose, identification or a common scheme or plan, and was to be considered by the jury for that purpose only and not as proof of the commission of the crime charged.

Evidence of a crime other than that charged is generally inadmissible as proof of the guilt of the defendant, however is admissible to show intent, motive, purpose, identity, or common scheme or plan. *Hill v. State*, (1983) Ind., 445 N.E.2d 994. The crime put into evidence here from Terre Haute was similar enough in its perpetration to be admissible under that holding. Defendant does not deny this, but claims the evidence should not have been admitted since he was acquitted of that crime by a jury. The fact that the defendant had been acquitted in Terre Haute, however, did not make Lugar's testimony inadmissible. In *McCartney v. State*, (1852) 3 Ind. 353, the Court held that the admissibility of evidence of similar offenses at a trial on charges of forging a bank bill was not affected by the fact that the defendant had been acquitted of such offenses. *McCartney* is still good and governing law to the extent that it stands for the proposition that evidence of a crime other than that charged, and for which the defendant has been acquitted is admissible to show intent, motive, purpose, identity, or common scheme or plan. However, in *McCartney*, the Court noted that the fact the defendant had been acquitted of the prior crimes should not be introduced into evidence. We distinguish our holding today from that held in *McCartney* by acknowledging the propriety with which the trial court admitted testimony that defendant Hare had been acquitted of the crime committed in Terre Haute. The fact that the defendant had been acquitted in Vigo County for the Terre Haute incident went to the weight of that testimony, not to its admissibility. We consider this to be the better rule as do most jurisdictions considering the issue.

For evidence of other offenses to be admissible there must be evidence of probative value that shows the defendant actually engaged in those acts. There were sufficient probative facts presented to the jury here which connected the defendant to the Terre Haute robbery. *Howell v. State*, (1980) Ind., 413 N.E.2d 225. The fact that the defendant had been acquitted in Vigo County went to the weight of that testimony and not to its admissibility. Furthermore, as we have pointed out, the jury was apprised of all of the circumstances of the trial in Terre Haute and the jury was fully aware of all of these facts in considering what weight to give the evidence. The trial judge properly instructed the jury prior to hearing the evidence as to the weight they were to give to the testimony and how they were to use it in deciding the issue of guilt or innocence. There was, therefore, no reversible error in permitting Lugar's testimony.

The trial court gave as its final instruction No. 8, the following:

"Evidence has been presented to you to indicate that the defendant may have committed other crimes and engaged in criminal conduct other than the robbery for which he is on trial. Such testimony

is not admissible as proof the defendant committed this robbery. It is admissible to show intent, purpose, identification or a common scheme or plan and was admitted by the court for those purposes only."

Since it was proper for the trial court to admit the testimony, it also was proper for him to give this instruction to the jury so that they might understand the import of the evidence and apply it properly in arriving at their final verdict.

X

■■■■■ Police Officer Freeman was permitted to testify as to the street value of the drugs found in possession of this appellant and his cohorts. His testimony was that the street value of the drugs was approximately $50.00. Defendant's only objection to the admission of this evidence is that a proper foundation did not exist for its introduction into evidence. His argument apparently is that the mere fact that Freeman was a police officer did not qualify him to testify as to street value of drugs. Officer Freeman, however, did qualify as an expert in this field as he testified he had been employed in the narcotics division for four years and received special education offered by the drug enforcement administration. An expert may be qualified by practical experience as well as by formal training and whether he is qualified as an expert is a matter within the sound discretion of the trial court. There was sufficient evidence here to justify the trial court in finding that Freeman was, in fact, an expert on this subject. *Culley v. State,* (1980) 179 Ind.App. 345, 385 N.E.2d 486; *Horn v. State,* (1978) 176 Ind.App. 527, 376 N.E.2d 512. Furthermore, the Court of Appeals has previously held that there is no error in allowing a police officer to testify from his knowledge gained as a member of the narcotics bureau as to the value of the drugs seized. The basis for that holding was that while the value of the drugs was not a necessary ingredient which the State must prove, it can be helpful to the jury in the light of

other circumstances in evidence to know whether the quantity of drugs was inconsequential or substantial. *Gooden v. State,* (1980) Ind.App., 401 N.E.2d 93; *Williams v. State,* (1973) 129 Ga.App. 103, 198 S.E.2d 683. Defendant, therefore, has presented no reversible error on this issue.

XI

■■■ Finally, the defendant claims the trial court erred by admitting the testimony of Officer Daniel Dunbar concerning the robbery at Castleton in which two Marion County sheriff's deputies were killed. This testimony was put into evidence merely to explain the purpose of the officer's presence at the American Inn. Its relationship has already been pointed out in this opinion. Officer Dunbar further testified that the defendant was not involved in this incident and that those who actually committed the Castleton robbery and murders were in custody. In view of the circumstances of the defendant's arrest it was necessary to present this evidence so that the jury might understand the circumstances under which the police encountered this defendant and his cohorts which ultimately resulted in their arrests and charges with this crime. Since it was clearly pointed out that the defendant was not involved in that incident, no prejudice resulted from such testimony. There was, therefore, no error in its admission.

Finding no reversible error, we affirm the trial court.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs with separate opinion in which PRENTICE, J., also concurs.

DeBRULER, Justice, concurring.

In this situation, appellant was arrested a month after the drugstore robbery. The arrest took place at a motel in another county. He was arrested upon probable cause to believe that he and his companions had committed a crime which was then and is now totally unrelated to the drugstore

robbery. I see no legitimate purpose to be served by the testimony of the police describing the events leading up to this arrest. It may have satisfied some curiosity on the part of the court, jury and counsel; showed the skill of the officers; dramatized the events; or have been amusing. However these are not the purposes of evidence at a trial on criminal charges and a courtroom is no place for such things. Evidence of this type can easily carry prejudicial implications that the accused is, for example, somehow unkind, lazy, irreverent, insolent, undisciplined, abusive, or generally undeserving. I am concerned, as I am sure the rest of this court is, that the trial courts of the state maintain a high degree of vigilance in restricting professional government witnesses to that part of the story of their investigation which has a thread of relevance to that which the prosecution is required to prove in order to make a *prima facie* case. It would have been well within the bounds of discretion for the officers in this case to have been restricted to testifying simply that appellant was arrested a month after the robbery at a motel in Indianapolis, and that his room had been searched, and several items seized, and so forth.

PRENTICE, J., concurs.