## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 19 2019, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Nathan Berkman<br>Michigan City, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Lyubov Gore<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathan Berkman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 19, 2019<br><br>Court of Appeals Case No.<br>45A05-1709-PC-2120<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Diane R. Boswell, Judge<br><br>The Honorable Natalie Bokota, Magistrate<br><br>Trial Court Cause No.<br>45G03-1409-PC-16 |

**Riley, Judge**

# STATEMENT OF THE CASE

Appellant-Petitioner, Nathan Berkman (Berkman), appeals the denial of his post-conviction relief.

We affirm.

# ISSUE

Berkman presents seven issues on appeal, which we consolidate and restate as the following single issue: Whether Berkman received ineffective assistance from Trial Counsel.

# FACTS AND PROCEDURAL HISTORY

The relevant facts, as set forth in this court's opinion issued in Berkman's direct appeal, are as follows

> In August of 2008, Berkman owed approximately $2000 to Olen Hawkins, from whom he had frequently purchased cocaine. On August 30, 2008, Berkman telephoned Hawkins, told him that he had the money he owed him, and arranged a meeting in a supermarket parking lot. Between 4:00 and 5:00 p.m., Berkman told Arlene Timmerman, his girlfriend and with whom he lived, that was going to leave to obtain money and cocaine and that he had to go by himself. Berkman left at approximately 6:00 p.m., in Timmerman's car.
>
> Berkman met Hawkins in the supermarket parking lot, parked next to him, and entered Hawkins's vehicle. When Hawkins asked Berkman if he had the money that he owed him, Berkman slit Hawkins's throat "from ear to ear and he robbed him for a couple ounces of dope and a bunch of money." [] Berkman

kicked Hawkins's dead body into the passenger seat and drove Hawkins's car back to Timmerman's house, arriving at approximately 9:30 to 10:00 p.m.

When Berkman arrived back at Timmerman's, he yelled for Timmerman. Timmerman went with Berkman to the garage, where she saw Hawkins's dead body in the passenger seat of his car. Berkman told Timmerman that he had cut Hawkins's throat and taken an ounce of cocaine from him. Berkman, Timmerman, and Tanya Sullivan, who was visiting, then smoked crack cocaine in the basement until approximately 1:30 or 2:00 a.m.

Late in the evening of August 31, 2008, or early in the morning of September 1, Berkman retrieved a knife from the kitchen, held it to Timmerman's neck, and said, "Get your f* * * * * * a* * downstairs now." [] Timmerman managed to elude Berkman, leave, and go to the home of friend Meghan Johnston. At approximately 7:00 or 8:00 a.m. on September 1, 2008, Timmerman called home, Berkman apologized, and Timmerman returned home. Berkman told her later that day that he had formulated a plan to dispose of Hawkins's body, which was still in Hawkins's car in the garage. Early in the morning of September 2, 2008, Berkman drove Hawkins's car to a field with Timmerman following in her car. While Timmerman waited, Berkman doused Hawkins's car with gasoline and set it aflame. Hawkins's burned-out car and remains were discovered on November 19, 2008.

*Berkman v. State,* 976 N.E.2d 68, 71 (Ind. Ct. App. 2012) *trans. denied*, *cert.*

*denied*, 571 U.S. 863 (2013).

[5] On June 9, 2009, the State filed an Information, charging Berkman with murder and felony murder in the perpetration of robbery, both felonies. On July 27, 2011, a jury acquitted Berkman of murder but failed to reach a verdict on the felony murder Count. A second jury trial began on August 30, 2011. After a seven-day jury trial, Berkman was found guilty on the felony murder charge. On October 3, 2011, the trial court conducted a sentencing hearing and sentenced Berkman to a term of sixty years in the Department of Correction. Berkman appealed.

[6] On direct appeal, Berkman raised four issues: (1) whether the trial court abused its discretion in denying his motion to dismiss as the instant charge was barred by prohibitions against double jeopardy; (2) whether the trial court abused its discretion in denying his motion for a mistrial because the trial court admitted certain testimony from a previous trial; (3) whether the trial court abused its discretion in admitting certain deposition testimony; and (4) whether his sixty-year sentence was inappropriate. On September 4, 2012, we affirmed the trial court. On March 7, 2013, the Indiana Supreme Court denied transfer. On October 7, 2013, the United States Supreme Court denied Berkman's petition for *certiorari*.

[7] On September 23, 2014, Berkman filed a *pro se* petition for post-conviction relief. On November 24, 2014, the State filed an answer. Following a hearing, on December 3, 2015, Berkman was permitted to file an amended petition, which he filed on June 20, 2016. The State also filed an amended response brief, and a hearing was conducted on August 12, 2016. The parties

subsequently filed their proposed findings of fact and conclusions of law. On August 25, 2017, the trial court issued findings of facts and conclusions thereon denying Berkman's petition for post-conviction relief.

[8] On September 7, 2017, Berkman filed a notice of appeal. After three extensions of time, Berkman submitted a defective brief on April 18, 2018. On May 21, 2018, we dismissed Berkman's appeal with prejudice. Berkman sought rehearing, which we denied on June 29, 2018. On July 12, 2018, Berkman filed a verified motion to file a belated brief and also filed a defect-free appellant's brief and appendix. On August 17, 2018, we granted Berkman's verified motion to file a belated brief, reinstated his appeal, and ordered Berkman to file his brief within thirty days. On the same day, Berkman filed his appellate brief, and the State subsequently filed a response.

[9] Berkman now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[10] Berkman argues that he received ineffective assistance of trial counsel.[1] Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5): *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on

---

[1] Although Berkman also argues that he received ineffective assistance of Appellate Counsel, he fails to develop that argument, therefore, it is waived for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a).

appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* If an issue was available on direct appeal but not litigated, it is waived. *Id.*

[11] Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1, § 6. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Little v. State*, 819 N.E.2d 496, 500 (Ind. Ct. App. 2004) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied*, *trans. denied*. In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Id.* Additionally, we remind Berkman that he is not entitled to a perfect trial, but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction. *Averhart v. State*, 614 N.E.2d 924, 929 (Ind. 1993).

[12] Initially, we note that Berkman proceeded *pro se* before the post-conviction court and again in this appeal. We have held on numerous occasions that litigants who choose to proceed *pro se* will be held to the same rules of procedure as trained legal counsel and must be prepared to accept the consequences of their actions. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct.

App. 2004). Furthermore, while we prefer to decide cases on the merits, we will deem alleged errors waived where an appellant's noncompliance with the rules of appellate procedure is so substantial that it impedes our consideration of the alleged errors. *Id*. "The purpose of the appellate rules, especially Indiana Appellate Rule 46, is to aid and expedite review, as well as to relieve the appellate court of the burden of searching the record and briefing the case." *Id*.

[13] Pursuant to Indiana Appellate Rule 46(A)(6), the statement of facts should contain a narrative description of the relevant facts in light of the applicable standard of review. In addition, the argument section of an appellant's brief should "contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . ." Ind. App. Rule 46(A)(8)(a). We will not consider an appellant's arguments on appeal when the appellant has failed to present cogent argument supported by authority and references to the record as required by the rules. *Shepherd*, 819 N.E.2d at 463. If we were to address such arguments, we would be forced to abdicate our role as an impartial tribunal and would instead become an advocate for one of the parties. *Id*. This we cannot do. *Id*.

[14] Although Berkman cites numerous cases within the argument section of his brief, he fails to use them in developing contentions in support of his position. Rather, they are merely general statements of rules of law without any application to the claims at hand. While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules is so

substantial as to impede our consideration of the issues, we may deem the alleged errors waived. *Shepherd*, 819 N.E.2d at 463. Although we would be justified to waive a majority of Berkman's issues on appeal, we will nevertheless attempt to address his arguments in so far as we can decipher them. However, we refuse to comb through the record or transcript to find evidence to support his allegations as we will not become an advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood. *Id*.

## II. *Ineffective Assistance of Counsel*

[15] Berkman contends that he was denied the effective assistance of Trial Counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors the result of the proceeding would have been different. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, (1984) *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and distinct inquiries. *Id*. Thus, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697) *reh'g denied*; *cert. denied*, 537 U.S. 839 (2002).

## A. *Evidence of Acquittal*

[16] Berkman claims that his Trial Counsel was ineffective for failing to advise the jury that he had been acquitted of murder in the first trial. At his post-conviction hearing, Berkman questioned Trial Counsel why he did not introduce evidence of his prior acquittal pursuant to *Coleman v. State*, 946 N.E.2d 1160, 1163 (Ind. Ct. App. 2011). Trial counsel testified that he did not believe that *Coleman* provided him with a legal basis to attempt to bring to the attention of the jury that Berkman had been previously acquitted of murder.

[17] In *Coleman*, Coleman shot two of his friends during a confrontation. *Id*. The State charged Coleman with murder, a felony, for the death of one of the victims, and attempted murder, a Class A felony, for shooting the other friend. *Id*. During a jury trial, Coleman admitted to the shootings, but contended that his actions against both victims were justified due to self-defense. *Id*. The jury returned a verdict of not guilty on the murder charge, but was unable to reach a verdict on the attempted murder charge. *Id*. The trial court declared a mistrial on the attempted murder charge and scheduled another trial. *Id*. Prior to retrial Coleman filed a motion to dismiss contending a subsequent trial on attempted murder was barred by collateral estoppel and would therefore violate the Double Jeopardy Clauses of both the United States and Indiana Constitutions. *Id*. After a hearing, the trial court denied the motion. *Id*. A retrial ensued, at the conclusion of which the jury found Coleman guilty as charged. *Id*. Thereafter the trial court sentenced him to a term of forty-five years. *Id*. Coleman appealed raising several issues for review. *Id*. In a divided opinion

we reversed Coleman's conviction on grounds of collateral estoppel. *Id*. Our supreme court granted transfer, reaching a different conclusion on the issue. *Id*. Our supreme court also addressed Coleman's claim that the trial court had erred by not permitting him to introduce evidence that he was acquitted in the shooting death of a victim. *Id*. The court found that the evidence of Coleman's acquittal of the murder charge was inadmissible in the subsequent attempted murder prosecution, since the video documenting the shooting of the attempted murder victim did not reveal that Coleman shot the murder victim, thus, there was no evidence of the prior crime. *Id*. Specifically, the court found that "in the absence of any evidence revealing a crime against" the murder victim, Coleman "was not entitled to introduce evidence of [the] acquittal." *Id*. at 1170.

[18] Trial Counsel would not have successfully argued for the admission of evidence of Berkman's prior acquittal by relying on *Coleman*. *Coleman* is inapplicable to this case and simply does not stand for an all-inclusive admission of evidence of a prior acquittal is admissible. Moreover, Berkman makes no attempt to show how *Coleman* allows evidence of a defendant's prior acquittal admissible. In addition we find that the fact that Berkman was acquitted of the murder charge in the first trial was of no moment. Our Supreme Court has held that a crime of which a defendant has been acquitted is admissible to show proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Hare v. State*, 467 N.E.2d 7, 18 (Ind.1984). Berkman does not claim that his prior murder acquittal was relevant for any legitimate purpose such as

"motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.

[19] Moreover, it is well established that counsel is afforded considerable discretion in choosing strategy and tactics. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). We strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. At the post-conviction hearing, Trial Counsel explained that he was aware of *Coleman* at the time of the trial, but he could "think" not "legal basis" to attempt to bring to the attention of the jury that Berkman had been previously acquitted of murder. It is apparent that Trial Counsel exercised reasonable professional judgment when he decided not to introduce evidence of Berkman's prior acquittal of the murder charge.

[20] Based on the foregoing, we conclude that Berkman's Trial Counsel could not have been ineffective for failing to present evidence of Berkman's acquittal, since the trial court would not have admitted that evidence.

### B. *Robbery Charge*

[21] Berkman argues that his Trial Counsel performed deficiently since he failed to argue at his trial, that State should have additionally charged him with robbery, the underlying felony for the felony murder. The State contends that it does "not need to charge both felony murder and the underlying felony when charging a defendant with felony murder. In fact, the State frequently charges felony murder as a stand-alone offense and does not charge the underlying

felony." (Appellant's Br. p. 26). The State continues, "Berkman can point to no requirement in the law, and the State is unaware of any, that requires the State to charge the underlying felony in addition to felony murder as a separate [C]ount in the charging [I]nformation." (Appellant's Br. p. 26). We agree with the State.

[22] Although Berkman cites to several cases where the underlying felony in addition to the felony murder was charged, those cases are inapplicable in this case since they do not establish that the State was required to separately charge the underlying felony. Trial Counsel would not have prevailed in arguing at trial that the State should have charged Berkman with robbery in addition to murder. Therefore, Trial Counsel cannot be said to have performed deficiently by failing to raise an argument that was completely unsupported by law and that would not have been successful at the trial. Similarly, we conclude that the Trial Counsel did not render deficient performance.

### C. *Failure to Object*

[23] To establish ineffective assistance based on the failure to object to the admission of evidence, the petitioner must show that an objection would have been sustained had it been made and that the petitioner was prejudiced by the failure to object. *Taylor v. State*, 929 N.E.2d 912, 918 (Ind. Ct. App. 2010), *trans. denied*. *Strickland* does not require any more of counsel's performance than that, and it "does not guarantee perfect representation, only a reasonably competent attorney." *McCullough v. State*, 973 N.E.2d 62, 76 (Ind. Ct. App. 2012), *trans. denied*. Moreover, the inquiry under *Strickland* is not whether trial counsel

could have done more, but instead whether counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 694. Additionally, we remind Berkman that he is not entitled to a perfect trial, but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction. *Averhart*, 614 N.E.2d at 929.

[24] As far as we can discern, Berkman contends that Trial Counsel failed to object to the admission of Timmerman's deposition at his trial. The record shows that prior to Berkman's second trial, Berkman's former girlfriend, Timmerman, who was among the State's key witnesses, was unavailable to testify. Trial Counsel objected to the admission of Timmerman's deposition testimony, moved for a mistrial, but was denied. During the post-conviction hearing, Trial Counsel explained, "I lost the [] Timmerman argument, but not for lack of trying." (PCR Tr. p. 185). Trial Counsel was not ineffective just because the trial court issued unfavorable rulings in response to his objections. To the contrary, the facts indeed show that Trial Counsel did his utmost to ensure that Timmerman's testimony would not be admitted. Even if Trial Counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, Berkman cannot show he was prejudiced by Trial Counsel's performance. Similarly, we find that the post-conviction court did not err in denying Berkman's claim on this issue.

### D. *Free Standing Claims*

[25] In addition to his allegations of ineffective assistance of Trial Counsel, Berkman asserts numerous complaints against the trial court and the State. Among these

contentions are allegations that the trial court and the State colluded against him at trial, and that the trial court abused its discretion in admitting certain evidence. As a general rule, most free-standing claims of error are not available in a post-conviction proceeding because of the doctrines of waiver and *res judicata*. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). For instance, "[i]f an issue was known and available, but not raised on direct appeal, it is waived." *Id*. Likewise, "[i]f an issue was raised on direct appeal, but was decided adversely, it is *res judicata*." *Id*. Accordingly, Berkman waived these allegations, as their review is unavailable to him in post-conviction relief proceedings.

# CONCLUSION

Based on the foregoing, we conclude that Trial Counsel provided effective assistance to Berkman, and we accordingly affirm the post-conviction court's denial of Berkman's petition.

Affirmed.

Kirsch, J. and Robb, J. concur