Dennis Michael BRANDON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 479S103.

Supreme Court of Indiana.

Nov. 7, 1979.

John D. Clouse and Michael C. Keating, Evansville, for appellant (defendant below).

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

The defendant, Dennis Michael Brandon, was convicted by a jury of bank robbery, Ind.Code § 35–13–5–1 (Burns 1975), and was sentenced to twenty years in prison.

His direct appeal raises the following seven issues:

1. Whether the court erred in permitting the state to cross-examine the defendant concerning an unrelated arrest of his brother;

2. Whether the court erred in admitting into evidence one of the state's exhibits over defendant's objection that the enabling search warrant was not first produced;

3. Whether the court erred in restricting the cross-examination of one of the state's witnesses;

4. Whether the court erred in admitting certain evidence and testimony over defendant's objections that they were hearsay;

5. Whether the court erred in overruling defendant's motions for mistrial after two alleged instances of trial misconduct;

6. Whether the court erred in refusing to give one of defendant's instructions and in giving an allegedly erroneous instruction of its own; and

7. Whether the defendant was entitled to be sentenced under the new criminal code.

A summary of the facts most favorable to the state shows that The National City Bank of Evansville was robbed on the morning of June 9, 1977, by a group of five people, four black men and one black woman. They were all wearing dark clothing and stocking masks. One was armed with a shotgun and the others with revolvers. One of the men jumped over a counter and shouted for the employees to hit the floor. Then the robbers took money out of the tellers' drawers and put it in a brown paper sack.

The main witness for the state, Vicki Myers, was a young white girl who testified that she had driven the "switch" car for the robbers on June 9, 1977, and had been charged with bank robbery as a result. She served a sentence at the Indiana Girls' School for this incident. Vicki testified that she first met the defendant late in May, 1977, at the apartment of two of her friends who lived on her street in Evansville. These two friends were "T" Tillman

Morris and Janice Cooke. Morris was one of the five people subsequently involved in the robbery. Vicki also testified that she saw the defendant on two later occasions when she was visiting Morris's apartment. On one occasion, about a week before the robbery, there were five people present besides herself, Janice Cooke, Tillman Morris, Dave Johnson, Larry James and the defendant. Morris, who was also known as Silas Kelley, asked Vicki if she would drive a switch-over car during the robbery. She said she would do it for the money.

On the day of the robbery Vicki went to Morris's apartment around 7:30 a. m. She saw four handguns, one sawed-off shotgun, ammunition, a pillowcase, and stocking hose laid out on the couch and floor. The five people who participated in the robbery assembled there by 8:30 a. m. Vicki testified that the others involved were Tillman Morris, Rene Jeffries, Larry James, Dave Johnson and the defendant. Vicki drove a car to an apartment complex parking lot. After the robbery, the five persons involved drove to the parking lot where Vicki was waiting. Two of them got into a third car and three of them got into Vicki's car. Defendant was one of the men who got into Vicki's car. The three men got down on the floorboard and instructed Vicki to drive to a certain address on Line Street. There they all went into an upstairs apartment, met the other two robbers and divided up the money.

The defendant put on an alibi defense. He testified that he lived in St. Louis, Missouri, at the time of the incident and was employed at the Bailey and English Mortuary there and was also attending technical school. His employer testified that he did not remember the defendant ever missing work during May or June of 1977. Two of defendant's friends in St. Louis testified that they did not know that the defendant ever left town during those months. The state presented telephone company records that showed there had been a large number of calls from the telephone number of one of the defendant's friends in St. Louis to the number of Janice Cooke's residence in

Evansville. There were also telephone records showing several calls from Cooke's number in Evansville to various numbers in St. Louis.

### I.

On direct examination, defendant stated that he did not know anything about Evansville before June 9, 1977. On cross-examination, he stated that he had never heard of Evansville before he got locked up. The prosecutor then asked whether defendant remembered his brother getting arrested in Evansville. The defendant objected, but this objection was overruled, and the defendant answered that he didn't know about his brother being arrested in Evansville until after he himself was arrested. Defendant now argues that this question and answer were so prejudicial as to require reversal.

■ It is well settled that the scope and extent of cross-examination is largely within the trial court's discretion. Only upon a showing of a clear abuse of such discretion will the action of the trial court be reversed. *Smith v. State,* (1979) Ind., 388 N.E.2d 484; *Pulliam v. State,* (1976) 264 Ind. 381, 345 N.E.2d 229; *Brooks v. State,* (1973) 259 Ind. 678, 291 N.E.2d 559. Since the complained of question was obviously relevant to the credibility of defendant's prior testimony that he had never heard of Evansville, we find no abuse of discretion here.

### II.

■ Defendant next contends that the trial court erred in admitting into evidence state's Exhibit No. 12, Janice Cooke's telephone bill, because the enabling search warrant was not first produced. Although it is true that there was a requirement established in *Mata v. State,* (1932) 203 Ind. 291, 179 N.E. 916, that the search warrant under which a search and seizure was made must be introduced into evidence whenever the state seeks to introduce items seized under its authority, defendant cannot rely on that authority under the circumstances of the instant case.

■ In this case the defendant can claim no proprietary interest in either Janice Cooke's residence or in her telephone bill. The law is well settled in Indiana that unlawful search and seizure is a personal privilege. An illegal search of a third party's property cannot be made the basis of a claim of a defendant for the exclusion of such evidence. *Kirkland v. State,* (1968) 249 Ind. 305, 232 N.E.2d 365; *Adler v. State,* (1967) 248 Ind. 193, 225 N.E.2d 171.

■ Furthermore, we also note that the validity of the *Mata* requirement has been questioned in an excellent and well-reasoned opinion by The Honorable Sue Shields of the Court of Appeals, Second District, in *Clark v. State,* (1978) Ind.App., 379 N.E.2d 987. We agree with Judge Shields's conclusions where she states:

> "Whenever the admissibility of evidence secured under a search warrant is challenged, the issue is presented before the trial court outside the jury's presence. There is no reason for the trier of fact to view the probable cause affidavit or search warrant, particularly since these documents often contain statements highly prejudicial to the defendant." 379 N.E.2d at 988–89 [footnotes omitted].

There was no error in the admission of this evidence.

### III.

The defendant next argues that the trial court erred in limiting his cross-examination of one of the state's witnesses. The witness was an FBI special agent who had qualified himself as an expert witness in the area of identification of suspects and who had been involved in showing photographs to Vicki Myers for the purpose of identifying any of the persons involved in the robbery. At one point during cross-examination, the defense counsel asked the agent:

> "Now if you have a photograph, and say if an agent or a policeman with an ax to grind, the power of suggestion can be a very potent factor, can it not sir?"

■ There was an objection by the state on the basis that this was a hypothetical question and improperly assumed facts not in evidence. The objection was sustained. As we have stated above, the scope and extent of cross-examination is within the trial court's discretion. *Smith v. State, supra; Brooks v. State, supra.* It is also well settled that a hypothetical question which is based upon a fact not in evidence cannot be proof of any issue. *Ecker v. Ecker,* (1975) 163 Ind.App. 339, 323 N.E.2d 683; *Harrison v. Daniels,* (1970) 147 Ind. App. 666, 263 N.E.2d 288. Therefore we find no abuse of discretion in the trial court sustaining this objection.

## IV.

Defendant next argues that it was error to admit state's Exhibits Nos. 31A–F which were business office copies of the microfiche records of the telephone company showing all long distance calls charged to a certain number in St. Louis. Defendant claims that these copies were not sufficiently qualified to be admitted under the business records exception to the hearsay rule. Defendant admits that these records are regular business records but argues that they are not the original or first permanent entry and therefore cannot be admitted.

The requisites for admission of a hearsay document offered under the business records exception are set forth in *American United Life Ins. Co. v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651, rehearing denied 158 Ind.App. 29, 306 N.E.2d 131:

> "A synthesis of the Indiana cases treating what modern authorities call the 'business record' exception to the hearsay rule is that documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." 158 Ind.App. at 36–37, 301 N.E.2d at 656.

■ The theory behind this rule is that regularly maintained business records are admissible in evidence as an exception to the hearsay rule because the fact that they are regularly maintained records upon which the company relies in conducting its business assures their trustworthiness. The rules of evidence governing the admission of business records are of common law origin and have evolved on a case-by-case basis to keep pace with the technology of current business methods of record keeping. It has already been clearly established in this state that a duplicate of a document is admissible in evidence "to the same extent as an original unless a genuine issue is raised as to the authenticity of the original, or under the circumstances existing it would be unfair to admit the duplicate as an original." *Wilson v. State,* (1976) Ind.App., 348 N.E.2d 90, 95. Even though the scrivener's quill pens in original entry books have been replaced by magnetic tapes, microfiche files and computer print-outs, the theory behind the reliability of regularly kept business records remains the same and computer-generated evidence is no less reliable than original entry books provided a proper foundation is laid. *United States v. DeGeorgia,* (9th Cir. 1969) 420 F.2d 889; *McCormick on Evidence* § 314 (1972); 5 *Wigmore, Evidence* §§ 1517–1561 (Chadbourn rev. 1974).

■ We therefore find that our business records exception is sufficiently broad to include within its scope a system of keeping records stored on a computer and electronically printed out on demand. However, before such records can be admitted, it must be shown that the electronic computing equipment is standard, that the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and that the testimony satisfies the court that the sources of information and method and time of preparation were such as to indicate its authenticity and accuracy and justify its acceptance as trustworthy. A similar three-part test has been set out by the Mississippi Supreme Court in *King v. State ex rel. Murdock Acceptance Corp.,* (1969)

Miss., 222 So.2d 393, and is followed in several other jurisdictions. *Commonwealth v. Hogan,* (1979) —— Mass.App. ——, 387 N.E.2d 158; *State v. Kane,* (1979) 23 Wash. App. 107, 594 P.2d 1357; *Grand Liquor Co., Inc. v. Department of Revenue,* (1977) 67 Ill.2d 195, 10 Ill.Dec. 472, 367 N.E.2d 1238; *Ed Guth Realty Co. v. Gingold,* (1974) 34 N.Y.2d 440, 358 N.Y.S.2d 367, 315 N.E.2d 441; *Merrick v. United States Rubber Co.,* (1968) 7 Ariz.App. 433, 440 P.2d 314.

In the instant case, there was testimony describing the manner in which the telephone calls were recorded on magnetic tape at the time each call was made and how the computer later printed out microfiche records for filing. The customer and business office copies of each bill were then printed out from the microfiche and the business office copy was admitted into evidence at the trial. The witness testified that the computer equipment used was a standard type of computer system and had been used by the company for several years. We find no error in admitting the business office copy of the customer's telephone bill into evidence under the business records exception since a sufficient foundation was laid.

In order to impeach defendant's alibi defense, the state put on the stand, Miss Cheryl Pikoriatis who was the financial aid administrator at Bailey Technical School in St. Louis where defendant claimed he had been enrolled at the time of the crime. Miss Pikoriatis testified that she had searched the enrollment records for certain dates in May and June of 1977, and had not found any record indicating that defendant was enrolled during those times. She further testified that in her capacity as financial aid administrator, all applications for enrollment were processed through her office and that she was one of the keepers of the records.

■ Defendant contends that this testimony is inadmissible since it is testimony of the negative results of a search of records and is hearsay. However, testimony as to the negative results of a search of regularly kept records has long been recognized as admissible in this state, *Lacey v. Marnan,*

(1871) 37 Ind. 168. It has also been well established by the federal rules of evidence and by statute or case law in several other jurisdictions that this type of testimony based upon what regularly-maintained business records do not show is admissible as a corollary of the business records exception. Rule 803(7) Fed.R.Evid.; *United States v. DeGeorgia, supra; Commonwealth v. Hogan, supra; Hutchinson v. State,* (1977) 36 Md.App. 58, 373 A.2d 50; *Linebarger v. State,* (Okla.Crim.App.1974) 527 P.2d 178.

■ Since the witness in the instant case was one of the keepers of the records and was testifying about the absence of any records where there normally would have been records had defendant been enrolled in the school, there was no error in admitting this testimony.

### V.

Defendant argues that the trial court erred in not granting his request for a mistrial at two different times after alleged misconduct by the court. The first time he claims that there was an improper private conversation between the judge and the prosecutor concerning the issues of the case and the type of evidence that would be admitted. The record does not support this contention.

The comments by the court which defendant refers to cannot be characterized as private since they took place at the bench and defense counsel was present although he turned and walked away. The comments were also not an improper discussion of the issues since the record shows that the judge was only remarking on the type of evidence which could be admitted and that a proper foundation must be laid for any evidence.

■ Defendant has cited no specific Indiana authority to support his claims, but relies on cases which talk about the duty of the trial judge to preside in an impartial manner. *Brannum v. State,* (1977) 267 Ind. 51, 366 N.E.2d 1180. We find no error here since these comments were only about the general admissibility of evidence, were not

made in private, and were not shown to be less than strictly impartial in manner.

 Toward the close of the trial the court made an announcement in the presence of the jury that any instructions which parties wished to tender should be tendered by 9:00 a. m. the following morning. Defendant now claims that this announcement diluted the importance of the instructions. We find no merit to this contention since the court's announcement did not deal with any specific instructions but dealt only with a procedural requirement. The announcement was so generalized that any possible prejudice or alleged detraction from the court's authority would be extremely remote. There was no error in the court's refusal of the motion for mistrial at this point.

## VI.

 The defendant next argues that the court erred in refusing to give his instruction No. 9 to the jury and giving instead the court's instruction No. 17 and the accompanying verdict form. The court's instruction and verdict form did not allow the jury to set the penalty but rather stated that the penalty was to be fixed by the court for a determinate period of not less than ten years. The defendant contends that this provision deprived him of his constitutional right to trial by jury. We find no error here since the complained of instruction and verdict form were a correct statement of the law as found in the bank robbery statute under which defendant was charged and convicted. Ind.Code § 35–13–5–1 (Burns 1975). This Court has long held that the legislature may constitutionally provide that judgment be imposed by the court and not by the jury. *Mack v. State,* (1932) 203 Ind. 355, 180 N.E. 279. There was no deprivation of a constitutional right here.

## VII.

Defendant finally argues that he should have been sentenced under the new criminal code. The bank robbery statute was repealed effective October 1, 1977, and no separate statute defining the specific offense of bank robbery was enacted as part of the new criminal code. Defendant contends that the allegations contained in the charging information define either the offense of robbery or robbery while armed as set forth in the new criminal code. Ind. Code § 35–42–5–1 (Burns 1979). He contends that the penalty under this statute would be ameliorative and therefore he is entitled to be sentenced under the new statute on the authority of *Maynard v. State,* (1977) Ind.App., 367 N.E.2d 5, which allowed a defendant to take advantage of an ameliorative amendment enacted by the legislature subsequent to the commission of the crime.

 This Court has recently dealt with this issue and has clearly held that the new criminal code does not apply retroactively since it contains an express savings clause which provides that an offense committed prior to October 1, 1977, shall be prosecuted and punished under the old law. Acts 1977, P.L. 340, § 150(a), (b); *Davis v. State,* (1979) Ind., 395 N.E.2d 232; *Lynk v. State,* (1979) Ind., 393 N.E.2d 751; *Rogers v. State,* (1979) Ind., 383 N.E.2d 1035.

 In the instant case, the crime was committed on June 9, 1977, several months before the new code went into effect. Therefore, the offense and penalties in effect at the time of the crime govern this case. There was no error in prosecuting and sentencing the defendant under the old criminal code.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.