**Ernest C. PILLOW, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 783S268.

Supreme Court of Indiana.

July 3, 1985.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of burglary, a class B felony, Ind.Code § 35–43–2–1, criminal deviate conduct, a class A felony, Ind.Code § 35–42–4–2, con-finement, a class B felony, Ind.Code § 35–42–3–3, rape, a class A felony, Ind.Code § 35–42–4–1, and habitual offender, Ind. Code § 35–50–2–8. Appellant received consecutive sentences of ten and thirty years for the burglary and criminal deviate conduct and concurrent sentences of ten and ·thirty years for the confinement and rape. The latter two sentences are also concurrent to the sentences on the first two counts. Appellant received a thirty-year sentence on the habitual offender count to be served consecutively to the sentences on the first two counts.

Appellant raises three issues on appeal: (1) whether there was sufficient evidence to support the jury's verdict; (2) whether the sentence imposed by the court was excessive and constituted cruel and unusual punishment; (3) whether the action of the prosecutor in asking prejudicial questions of one witness amounted to misconduct and constituted reversible error.

These are the facts that tend to support the determination of guilt. On April 18, 1980, at 12:30 p.m., appellant broke through the locked storm door of the victim's home. He threatened her with a gun and forced her to have oral sex and sexual intercourse. The victim's husband came home during this time and appellant forced him to lie face down on the floor and tied his hands behind his back. Appellant raped and sodomized the victim a second time. Two neighbors noticed appellant entering and leaving the victim's home and were able to describe appellant and the car he was driving. One neighbor wrote down the car's license plate number. This number was traced to appellant's father with whom appellant was living at the time of the crime. Both the victim and her husband positively identified the appellant in court as their assailant.

I.

Appellant argues that there was insufficient evidence to support his convictions. Specifically, he contends that there were discrepancies in the victim's identification,

no investigation of the similar appearance of himself and his brothers, and no consideration of the fact that he presented evidence of an alibi.

On review, this Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt, the judgment must be affirmed. *Pyle v. State* (1985), Ind., 476 N.E.2d 124.

In this case, the victim gave consistent detailed descriptions of her assailant's appearance to the police and picked his photograph out of a police photographic array. She unequivocally identified him in court as her assailant and was able to point out several distinguishing features between appellant and his brother when she was shown the brother's picture. In addition to this, the husband also positively identified appellant during the trial as his assailant. The husband explained he had only had a short time to view appellant because appellant was wearing sunglasses and everytime he tried to look at him, appellant told him to turn away and not look. The husband picked two or three photos out of the police photographic array and one photo was of the appellant. Two neighbors were able to describe the man they saw entering and leaving the victim's house and the car he was driving.

The discrepancies in the victim's description which appellant points out concern the size of his moustache, the type of warm-up suit he was wearing, and whether he was wearing gloves. The victim also testified that her assailant had what felt like a wart on his penis. Appellant's former girlfriend testified that appellant did not have a wart on his penis. In pointing out these discrepancies, appellant is asking us to draw competing inferences from the body of facts and reweigh the evidence which we cannot do. It is the duty of the jury to resolve conflicts in the testimony and weigh the evidence. *Hovis v. State* (1983), Ind., 455 N.E.2d 577.

Appellant also presented evidence which showed that he was at work at 3:30 p.m. the day of the crime. Although he characterizes this as evidence of an alibi, the record shows that the crime occurred between 12:30 p.m. and 1:30 p.m., and that it would take approximately thirty minutes to drive from the scene of the crime to the place where appellant worked. It is reasonable to conclude from this evidence that appellant was able to be at the scene of the crime and still be able to report for work at 3:30 p.m. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence. *Smith v. State* (1983), Ind., 455 N.E.2d 346. There was substantial evidence, as detailed above, to support the jury's determination that appellant was the individual who broke into the victim's home and assaulted her.

## II.

Defendant argues that the total seventy-year sentence imposed by the court is excessive and unconstitutional. The Eighth Amendment to the United States Constitution and its Indiana counterpart safeguard against cruel or unusual punishment. These safeguards generally proscribe punishments that are grossly disproportionate to the severity of the crime or are of such an atrocious or obsolete form that they make no measurable contribution to acceptable goals of punishment. *Frappier v. State* (1983), Ind., 448 N.E.2d 1188. Here, appellant broke into the victim's home, threatened her with a gun, repeatedly assaulted her, and confined her husband. The sentence of seventy years is within the statutory limits and is neither atrocious nor excessive punishment in relation to the crimes appellant committed.

However, appellant also claims that the trial court failed to state any reasons for imposing the enhanced sentence of consecutive terms on Counts I and II. This

Court has consistently held that it is within the discretion of the trial court whether the basic sentence for a crime will be increased or decreased or consecutive sentences be imposed because of aggravating or mitigating circumstances. The court must justify any increased sentence with a statement of the particular facts and circumstances it considered in finding aggravating factors. *Tucker v. State* (1983), Ind., 443 N.E.2d 840.

■ Here, the trial court did not give any statement of the reasons for imposing consecutive sentences in the sentencing order, and we do not have the transcript of the sentencing hearing before us. Therefore, since the record on appeal in this case is not adequate to support the imposition of the consecutive terms on Counts I and II, the cause is remanded with instructions that the trial court either enter findings, if any, to support the consecutive sentences, or, alternatively, to resentence appellant to concurrent terms.

■ Furthermore, we note that the sentencing order does not state which underlying felony is to be enhanced by the finding of habitual offender status. This Court has consistently stated that a finding that an individual is a habitual offender allows the trial court to enhance the sentence of an underlying felony. The habitual offender statute does not set forth an offense in and of itself. When there are two or more underlying felony sentences, the judge must choose one to be enhanced. *Galmore v. State* (1984), Ind., 467 N.E.2d 1173. On remand, the trial court must correct the sentence to show which underlying felony is to be enhanced by the habitual offender count.

### III.

Appellant finally argues that the State asked improper prejudicial questions of one witness and injected an evidentiary harpoon into the trial. During the direct examination of the police officer from Virginia who had arrested appellant, Marion County Prosecutor Stephen Goldsmith asked the officer several times what appel-

lant said when he was arrested. The officer had already described his initial contact with appellant when appellant pulled his car abruptly in front of the officer's car without using a turn signal. The officer activated his red lights and siren but appellant accelerated his vehicle to a high rate of speed and raced through a residential area and into an apartment complex. The officer testified that several pedestrians' lives were endangered as appellant raced his car through the residential area. Finally, appellant stopped his car in the apartment complex and tried to flee on foot, but the police officer was able to chase him and subdue him after a struggle.

The officer testified that he arrested appellant, took him to the police station, and took his driver's license. The prosecutor asked the officer if appellant volunteered any comments at that point. The officer said that appellant told him he was using a false I.D. and then told him his true name and birthdate. The prosecutor then asked the officer if appellant said anything else and the officer responded: "He said ... he was glad I caught him and that, you know, he said it was just a great relief or a great weight off his shoulders and that he needed help and he was just glad it was all over."

The prosecutor then asked: "Did he say anything about whether he had done a terrible thing or not?" The officer started to answer and said, "Yes, he did," at the same time defense counsel objected to the question. The court sustained the objection and then at counsel's request admonished the jury to disregard the prosecutor's last question. The prosecutor then asked: "Did he say anything further about what he had done?" Again, there was an objection to the form of the question which was also sustained. Finally the prosecutor asked: "Corporal, do you recollect telling me that the defendant told you that he had done a terrible thing?" Again there was an objection and then a discussion out of the presence of the jury. During this discussion, the court admonished the police officer not to testify as to whether appel-

lant said he had done a terrible thing as this specific comment had not been revealed to the defense. When the jury was recalled, the officer repeated his original testimony about what appellant told him at the police station, and there were no further questions or testimony about appellant's alleged statement that he had done a terrible thing.

█ Appellant argues that the conduct of the prosecutor in repeatedly asking the same improper question was inflammatory, prejudicial, and constituted an evidentiary harpoon which could not be cured by the trial court's admonition. This Court has held that when it is apparent that the "sole purpose of calling the witness was to wield the *evidential harpoon,* deliberately calculated by counsel to prejudice the jury against the defendant and his defense," an admonishment cannot cure the error and a mistrial should be declared. *White v. State* (1971), 257 Ind. 64, 76, 272 N.E.2d 312, 319 (emphasis in original).

█ However, in cases involving simple irregularities such as counsel asking leading questions or questions calling for hearsay answers, there is a strong presumption that the jury was able to follow the admonitions of the trial court to disregard any hastily given evidence. *Davenport v. State* (1984), Ind. 464 N.E.2d 1302, 1308. In general, conduct and statements made at the time of arrest may constitute evidence of guilt. The prosecutor's questions probed this permitted realm and were examples of the irregularities which are presumed to be cured by a proper admonishment.

█ Furthermore, the granting of a mistrial lies largely within the discretion of the trial court and is only proper where, under all the circumstances, the appellant has been placed in a position of grave peril to which he should not have been subjected. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964. If a jury is admonished by the trial court, to disregard what has occurred at trial, or if other reasonable curative measures are taken, reversible error

will not normally be found. *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116.

█ In this case, appellant's counsel continually objected to the improper questions and the court did give one admonishment, but there was no motion for a mistrial. Assuming, *arguendo,* that a motion for mistrial had been made, appellant has not shown that he was placed in a position of grave peril, to which he should not have been subjected, which would have required the trial court to grant a mistrial. The trial court did take proper curative measures to insure the jury disregarded the prosecutor's improper questions. Any prejudicial effect of the questions was minimal since the officer had already described appellant's desperate efforts to escape arrest, and the jury could easily infer from those actions that appellant felt guilt from something more significant than making a minor traffic violation. The trial court's rulings on objections to the prosecutor's questions were not error.

The cause is remanded with instructions for the trial court to enter findings to support the imposition of consecutive sentences on Counts I and II, or, alternatively, to resentence appellant to concurrent terms, and to correct the sentence on the habitual offender count. The trial court's judgment in all other things is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.