William A. MINNICK, Appellant,

v.

STATE of Indiana, Appellee.

No. 47S00–8603–CR–314.

Supreme Court of Indiana.

Oct. 2, 1989.

Rehearing Denied Dec. 13, 1989.

**472**

Woodrow S. Nasser, Public Defender for Appeal, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen. and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A Clay Circuit Court jury trial in 1982 resulted in the conviction of appellant of Murder, Rape, and Robbery. The jury recommended, and the trial court imposed, a sentence of death. Upon direct appeal, we found appellant's right to counsel had been impinged and thus an inculpatory statement made to police several hours after his arrest and introduced at trial was inadmissible. We reversed and remanded for a new trial. *Minnick v. State* (1984), Ind., 467 N.E.2d 754, *cert. denied, Indiana v. Minnick* (1985), 472 U.S. 1032, 105 S.Ct. 3512, 87 L.Ed.2d 642. Upon a retrial in the Lawrence Circuit Court in 1985, appellant was again found guilty of Murder, Rape, and Robbery and sentenced to death.

The facts are: On the afternoon of October 26, 1981, James D. Payne returned from work to his home in Greencastle, Indiana. He discovered his wife's body on the bedroom floor. He immediately called police. The ensuing investigation revealed Martha Payne had been raped, anally sodomized, stabbed in the right rear shoulder, and struck on the head with a table lamp. In addition, ligature marks on her neck indicated she had been strangled, and burn marks on her ankles showed the perpetrator had attempted to electrocute her as well. The cause of death was determined to be the knife wound in her upper back, which penetrated her lung and severed her pulmonary artery.

That night Sergeant Rodney Cline became aware that a "Dukes of Hazzard"-type car had been observed parked in a college fraternity's lot near the victim's home around the time of her death. Cline confirmed the driver's description matched that of appellant, who had spoken to Cline outside the victim's house that afternoon to apologize for a dispute the two had engaged in a week earlier concerning the involuntary towing of appellant's distinctive orange Dodge Charger.

Appellant was subsequently arrested and search warrants were obtained for his car and for specimens of his blood and hair for comparison with samples taken at the crime scene. A strand of hair found adhering to a length of electrical wire in appellant's car was determined to be of common origin with hair samples taken from the victim. Laboratory tests revealed the vic-

tim's blood was type B and matched blood specimens found on a broken table lamp and kitchen knife found at the crime scene. Semen specimens recovered from the carpet underneath the victim turned out to be from two separate donors: one a type O secretor, *i.e.*, one who secretes the antigens used in typing blood in other body fluids, and the other a non-secretor of unknown type. The victim's husband and appellant were each determined to have type O blood—the husband a secretor, appellant a non-secretor. Thus appellant was neither positively identified nor definitively ruled out as a donor of the semen found under the victim's body.

Appellant's alibi witnesses testified as to his whereabouts at various times the afternoon of the murder. Due to technical oversights following discovery of the victim's body, however, authorities were unable to pin down her time of death with any precision. Appellant admitted to Sergeant Cline that he had been in the victim's home that afternoon to see about doing some remodeling work for the Paynes. In addition, two witnesses testified at trial that appellant had made inculpatory admissions relating certain details of the murder while incarcerated.

After hearing oral argument in this cause, we remanded to the trial court for the limited purpose of hearing appellant's motion for new trial based upon two issues: 1) a misstatement by an expert witness for the State detected by appellant only after the filing of appellee's brief, and 2) newly-discovered evidence relating to blood group test results from samples taken from appellant and from the crime scene.

After hearing evidence, the trial court found that appellant had not been prejudiced by the misstatement and that the new evidence would not change the outcome upon retrial. The motion for new trial was denied, and appellant appeals.

■ Appellant contends the trial court erred in finding that the erroneous testimony of Michael Oliver had no effect on the outcome of the trial. The original brief of appellee included in its statement of facts that Sergeant Michael Oliver, a laboratory technician for the Indiana State Police, testified that he found seventeen hairs from the victim's pubic combing which were sufficiently similar to the suspect's pubic hair standard to be of common origin. The State included this testimony in its brief as evidence linking appellant to the crime.

In his reply brief, appellant strenuously maintained that the State had misrepresented the record. After consulting with the trial prosecutor, who could recall no such evidence at trial, counsel for appellee obtained the transcript and verified the statement. The witness was contacted and stated he did not remember so testifying, and that if he did so testify, he misspoke and what he meant to say was that the only pubic hair found on the person of the victim was her own hair. The court reporter was then contacted; she verified from the audio tape of the trial that the transcript was correct. Subsequently, the parties stipulated it was a misstatement.

Appellant argues that this misstatement, which "verified direct contact between the pubic areas of the Decedent and Appellant," undoubtedly influenced the jury and led to his conviction. In support, he maintains that absent the misstatement, the State had only a weak circumstantial case against him, devoid of any direct physical evidence linking him to the crime. He claims that since the experienced counsel for appellee was misled by the misstatement, the jury must have been misled also.

However, the record reveals there was in fact other physical evidence to link appellant to the crime. State's Exhibit 37–A, a strand of hair adhering to a length of electrical wire found in appellant's car, was determined to be of common origin with hair samples taken from the victim. We further note that the misstatement was made as part of a very lengthy response to a single question, in essence listing the results of all of the witness' hair sample tests and to the effect that aside from the test on Exhibit 37–A, none of the tests yielded material results.

■ A trial court's denial of a motion for a new trial will be reversed only upon

abuse of the trial court's discretion. *Moredock v. State* (1982), Ind., 441 N.E.2d 1372. Such an abuse must be shown by prejudice to the accused. *Winker v. State* (1977), 174 Ind.App. 258, 367 N.E.2d 26. In this instance, we agree with the trial court's finding that in light of its overwhelmingly contradictory context and the absence of any emphasis upon the misstated "fact," it likely failed to influence the jury and had no effect on the outcome of the trial.

■ Appellant contends the trial court erred in denying his motion for new trial based on newly-discovered evidence relating to blood type and secretor status. Due to refinements in laboratory testing procedures, it was discovered just before retrial that a Type O secretor semen stain found on the carpet beneath the victim was actually two stains, the second being from a non-secretor donor of unknown type. Subsequent to retrial it was determined that appellant was not a Type O secretor, but was instead a non-secretor. Appellant argues this new evidence is so exculpatory that it warrants a new trial.

■ To justify a new trial, newly-discovered evidence must, among other things, be likely to produce a different result upon retrial. *Smith v. State* (1982), Ind., 429 N.E.2d 956. In the case at bar, the jury was told that both appellant and the victim's husband were Type O secretors and that semen found in and beneath the victim was from a Type O secretor donor. Upon retrial, a new jury would be told that appellant was instead a Type O non-secretor and that the semen found beneath the victim came from two donors, one a Type O secretor, the other a non-secretor of unknown type. The trial court on remand decided this new evidence did not warrant a new trial because appellant was not ruled out as a possible donor of semen found on the carpet.

Appellant argues the trial court erred in concluding the non-secretor semen stain could have been deposited at the time of the murder. In support, he maintains that the reason the non-secretor semen was not detected when the carpet sample was first tested is because the non-secretor semen was already dried and not as fresh as the secretor semen and thus could not have been deposited when the victim was murdered.

The record, however, fails to bear out appellant on this point. Both expert witnesses testifying at the hearing on remand stated there was no method by which to compute the age of the semen stains, and neither was able to advance an opinion as to when either sample was deposited. We find no evidence in this record which rules out appellant as a potential donor. The newly-discovered serological evidence would not, therefore, be likely to produce a different result upon retrial.

The denial on remand of appellant's motion for a new trial was not error.

Appellant contends the trial court erred in denying his motion to dismiss the charging information, which he contends subjected him to "double jeopardy" because it failed to specify whether he was charged with intentional murder or felony murder. Appellant argues that by failing to specify whether he was charged with felony murder with rape and robbery as the underlying felonies, or with intentional murder committed in the course of rape and robbery, the State prejudicially denied him due process of law by presenting the jury with alternative theories of the crime and thus two approaches toward conviction arising out of one set of operative facts.

■ The State correctly points out that the doctrine of merger prevents a defendant from being sentenced twice for certain offenses arising from the same set of facts. Appellant thus was never subjected to double jeopardy. *Johnson v. State* (1987), Ind., 510 N.E.2d 174, *modified*, 516 N.E.2d 1053. Appellant then states in his reply brief that he takes exception not to the State charging alternative theories of murder, but to the State's vagueness in not denoting either intentional or felony murder so as to enable him to prepare a defense. He argues that because he was "made to guess" whether to defend against murder or felony murder, the information

"did in fact submit him to double jeopardy."

However, it is obvious that any felony murder defense asserting that appellant had not participated in the perpetration of a felony resulting in death would necessarily also defend against a charge of perpetrating an intentional killing arising from the same set of facts. For this reason, the information did not fail to sufficiently apprise appellant of the nature of the charges against him. Because appellant has failed to show any prejudice resulted from the information's alleged vagueness, the trial court did not err in denying his motion to dismiss. *See Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809.

Appellant contends Ind.Code § 35–50–2–9, the statutory authority by which he was sentenced to death, violates his Fourteenth Amendment right to equal protection in that it allows an intentional murderer to receive merely a prison sentence while a non-intentional felony murderer may receive a death sentence if the underlying felony is among those enumerated in the statute. Thus, he reasons, those persons convicted of certain felony murders may be sentenced to death not for the murder itself but rather for the underlying felony.

However, as pointed out by the State, Ind.Code § 35–50–2–9(b)(1) provides for the death penalty where "[t]he defendant committed the murder by intentionally killing the victim while committing [one of seven listed felonies, including rape and robbery]." Thus it is obvious that an "accidental" felony murderer must accumulate, aside from the underlying felony, at least one of the other nine aggravating circumstances set forth in § 9(b). Four of the nine involve killings that are premeditated, and the others involve the purposeful use of explosives, multiple homicides, prison inmates with at least twenty years remaining to serve, and duty-related killings of certain public officers.

As appellant was not convicted of felony murder but rather of murder, and his sentence moreover was not aggravated using any of the last four circumstances listed above, he lacks standing to raise this issue. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80. As our prior cases have held, our death penalty statute does not deny equal protection of the law to felony murderers. *Id.*

Appellant contends our death penalty statute violates the Eighth and Fourteenth Amendments because it imposes cruel and unusual punishment in some cases by failing to provide adequate guidelines for the sentencing authority so as to prevent an "accidental" felony murderer from receiving a death sentence. Our discussion above as well as our prior holdings dispose of this issue. *Id.; Resnover v. State* (1984), Ind., 460 N.E.2d 922, *cert. denied*, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160.

Appellant contends the trial court erred in denying his motion to dismiss due to lack of probable cause for his arrest. Appellant's admissions to police made after requesting an attorney were held to be inadmissible by this Court under direct appeal from his first trial and conviction. *Minnick, supra.* We remanded for a new trial. We did not remand, however, for *de novo* charging proceedings; thus the trial court did not err in refusing to hold a probable cause hearing. Regarding the original probable cause finding, our cases hold that probable cause to arrest exists when at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a person of reasonable caution to believe the defendant had committed the crime in question. *Funk v. State* (1981), Ind., 427 N.E.2d 1081.

In the case at bar, appellant's admission to Sergeant Cline that the former had been in the victim's home the afternoon of the murder, made while Cline was securing the perimeter of the Payne home, verified that appellant and his car had in fact been in close proximity to the murder that afternoon and, combined with Cline's knowledge of appellant's propensity toward burglary, provided sufficient probable cause for appellant's arrest.

Appellant argues his motion to dismiss should have been granted for the additional reason that he was "restrained" from attending the probable cause hearing and because no probable cause was found to support the rape and robbery charges. However, he offers no authority nor cogent argument to support these assertions; hence they are waived. Ind.R.App.P. 8.3(A)(7); *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

■ Appellant contends his motion to dismiss should have been granted because his initial hearing before a magistrate was held four hours beyond the twenty-four hour time limit set by Ind.Code § 18-1-11-8, in violation of his Fourth and Fifth Amendment rights. The remedy, however, for violation of the twenty-four hour limit is not, as appellant suggests, dismissal of charges; it is suppression of any statements made by the defendant found by the trial court to have resulted from the inherently coercive effective of prolonged detention. *Richey v. State* (1981), Ind., 426 N.E.2d 389. We note parenthetically that the legislature in 1981 revised the twenty-four hour limit into a requirement that the arrestee "be taken promptly before a judicial officer . . . for his initial hearing in court." Ind.Code § 35-33-7-1. Unless appellant can affirmatively show the error was prejudicial to his substantial rights, he will not be entitled to a reversal of his conviction. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. Appellant's confession made prior to his initial hearing was excluded at the instant trial. It thus is apparent the four-hour technical violation, absent any showing of prejudice, does not amount to reversible error.

■ Appellant contends the waiver of his rights obtained when he first was questioned by Sergeant Cline was procured perfunctorily and was not given intelligently, so that evidence obtained using a search warrant based upon remarks made by appellant subsequent to his waiver, yet prior to his request for counsel, should have been suppressed. Appellant claims he was told that signing the waiver was merely a formality and that he did not understand his *Miranda* rights.

However, Sergeant Cline testified appellant told him he was "well aware" of his rights and having just read them to appellant, Cline believed him. In reviewing the voluntariness of an inculpatory statement, we look only to whether the trial court's ruling was supported by substantial evidence of probative value. *Smith v. State* (1986), Ind., 491 N.E.2d 193. Here, Sergeant Cline's testimony adequately supports the trial court's admission of appellant's statement that he had been in the victim's home the afternoon of her murder; this custodial statement was thus properly used in obtaining a warrant to search appellant's car.

■ Even assuming for the sake of argument that appellant's remarks made at the police station were elicited illegally, Sergeant Cline testified appellant told him essentially the same things earlier, on the evening of the murder while Cline was posted outside the victim's home. When an independent source exists upon which to base a search, the coexistence of tainted "fruit" as an alternate basis does not preclude the admission of the results of the search. *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. Whether appellant's remarks at the police station were elicited voluntarily or otherwise, his comments outside the victim's house were volunteered, so that probable cause for the search warrant and for the arrest were properly found to exist.

■ Appellant contends the trial court erred in admitting over his objection State's Exhibit No. 29, the *Miranda* rights and waiver form signed by appellant. Our discussion above disposes of appellant's repetitive assertion that his waiver was not given knowingly and intelligently. Moreover, he fails to show that any prejudice resulted from the admission of the rights and waiver form itself. A trial court's decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in denial of a fair trial. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115. Thus in the

instant case, even if admission of the waiver form were error, it would not be reversible error.

■ In appellant's car were found a length of electric cord matching some cord found at the murder scene, a strand of hair adhering to the cord matching the victim's hair, and a black shaving bag containing coins. Appellant argues that discrepancies between the lengths of the hair and the wire and the mildewy odor of the shaving bag as described on the search warrant return, and as described at trial by witnesses, renders their admission erroneous. As these items were positively identified at trial as having been found in appellant's car, such discrepancies as alleged by appellant go only to their evidentiary weight and not to their admissibility. *See Kappos v. State* (1984), Ind., 465 N.E.2d 1092. The evidence was properly admitted.

■ Appellant contends the trial court committed fundamental error when it allowed jurors to communicate with members of their families after issuing a sequestration order. At that time, the trial court announced that visitation of the jurors by members of their immediate families would be allowed.

The State contends this "error" was waived by appellant, who voiced no objection until his motion to correct error. Counsel for appellant, of course, could have objected during the pretrial conference or in chambers during the trial while the "error" could still have been remedied. Appellant now argues that because his sequestration motion was "granted as filed," any "violation" of it amounts to fundamental error.

However, appellant's counsel's affidavit pertaining to the matters dealt with at the pretrial conference tends to show his motion was granted as modified by the trial court, making allowance for family visitation of the sequestered jurors. It thus was not a "violation" of the sequestration order to allow the visitations. Moreover, we have held that any error in failing to enforce jury sequestration is waived by failure to object contemporaneously. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. Thus any error resulting from the less-than-total sequestration of the jury, if error at all, was clearly not fundamental error and was waived by appellant's silence before and during the trial.

■ Appellant contends the trial court erred in admitting, allegedly over his objection, three photographs taken of the victim during life. State's Exhibit No. 18 is a wedding picture; No. 19 depicts the victim opening bridal shower gifts; and No. 20 portrays the victim and her husband standing before a covered bridge at Cataract Falls.

Appellant argues the photographs were irrelevant to any material issue and were introduced merely to inflame the jury with their "sympathetic settings" thereby violating his due process right to a fair trial. However, as pointed out by the State, the victim's time of death was at issue as it related to appellant's alibi defense. The exhibits were used for identification by witnesses who had observed the victim's movements and whereabouts on the day of her murder. Thus utilized, they were instrumental in completing the picture of the events surrounding the offense in question. A trial judge has great latitude in admitting evidence when the issue of its relevance is raised. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. Here the questioned evidence was repetitious of facts already in evidence, *viz*, the victim's marital status and her identity. The pictures were not unusual. *Id.* We see no reversible error in their admission.

■ Appellant contends the trial court erred in refusing to allow appellant and his girl friend, Charlene Jones, to testify regarding the "ill will" of Sergeant Cline which resulted in appellant becoming the sole target of the murder investigation. The record reveals that after hearing an offer of proof and argument by both sides, the trial court ruled the proffered testimony would be more confusing than clarifying as to any material facts at issue and excluded it.

Whether an arresting officer harbors a personal dislike for a criminal defendant

has no bearing upon whether that defendant committed the acts charged. Thus not tending to make any alleged material fact more or less probable, evidence of Sergeant Cline's hostility would be irrelevant and inadmissible. *See, e.g., Engle v. State* (1987), Ind., 506 N.E.2d 3. The trial court did not err in refusing testimony concerning Sergeant Cline's ill will.

■ Appellant contends the State's exhibits, numbering around fifty, were improperly admitted due to defects in the chain of custody. He objects to the chain only in regard to an alleged lack of proof of custody of the exhibits from the time his first trial ended in the Clay Circuit Court until they were obtained from there three years later for their admission at the instant trial in the Lawrence Circuit Court.

Appellant argues the State should have provided testimony by a Clay Circuit Court official, "even the Judge," to establish by what means the exhibits had remained secure from tampering. He specifically notes the wire found in his car was listed as being twelve inches long on the search warrant return, thirty-six inches long in the first trial record, and measured thirty-two inches long at the instant trial.

As the State points out, the officer who made out the return merely estimated the length of the coil of wire so as not to disturb it. And the roughly ten percent variance in described length between the two trials falls far short of conclusive proof of tampering.

■ To establish a proper chain of custody, the State need only present evidence which strongly suggests the whereabouts of the evidence at all times since coming into police possession. The State need not exclude all possibility of tampering but must provide some reasonable assurance the evidence remained in undisturbed condition. An argument merely raising the possibility of tampering will not support exclusion of the evidence. *Gardner v. State* (1987), Ind., 514 N.E.2d 1261.

In the case at bar, testimony showed the exhibits were received from the Clay Circuit Court evidence vault. Moreover, each exhibit still bore the numbered marking tag from the first trial. The chain of custody of the State's exhibits was sufficiently demonstrated such that their admission was not error.

■ Appellant contends the trial court erred in denying his motion for mistrial made when State's witness Norman Varvel testified he had turned over an exhibit to the Clay Circuit Court, "thereby advising the jury of a former trial" in violation of a pretrial agreement, of Ind.Code § 35-1-42-1 (repealed in 1977) and of our case law. He also argues that letting the jury know the victim's date of death, which was nearly four years prior to the instant trial, advised them of a prior trial.

However, how the witness actually testified, in response to questions directed towards an exhibit's chain of custody, is as follows:

"[Prosecutor] Q. Alright, and was that bottle then turned over to a Court from that period on?

A. Yes, it was."

This testimony on its face fails to convey the fact of a prior trial. The "Court" mentioned might well have referred to the instant trial court safeguarding the evidence after a suppression hearing. It clearly fails to have subjected appellant to a position of grave peril such as would mandate a mistrial. *See Pillow v. State* (1985), Ind., 479 N.E.2d 1301.

Appellant's argument that it required him subsequently to refer to the prior trial, *i.e.*, while reading from the prior trial record to impeach State's witnesses by means of inconsistencies between their current testimony and "prior testimony under oath," which might have meant "depositions," is similarly without merit. The trial court did not err in denying the motion for mistrial.

■ Appellant contends the trial court erred in admitting into evidence over his objection State's Exhibits No. 22, a search warrant; No. 23, a black shaving bag; No. 26, a Jim Beam bottle; No. 27, a receipt for money found in the bottle; and No. 37, the wire found in appellant's car. He cites

*Clark v. State* (1978), 177 Ind.App. 376, 379 N.E.2d 987 for the impropriety of introducing a search warrant into evidence along with the items seized.

However, *Clark* and *Brandon v. State* (1979), 272 Ind. 92, 396 N.E.2d 365 stand primarily for the proposition that it is not necessary to introduce a search warrant as a foundation for seized evidence; no incurable prejudice is presumed from a warrant's admission into evidence. As appellant mentions, the warrant exhibit was not passed to the jury. His assertion that he was prejudiced to an extent requiring reversal by "the mere fact that [the jury] heard the judge allow it into evidence" is patently untenable. Moreover, appellant failed to make this or any other specific objection to the search warrant's admission at trial. He thus failed to preserve it as error. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869. The search warrant's admission was not reversible error.

Appellant argues the bag, bottle, and receipt for change were erroneously admitted because no connection was shown between the items and either appellant or the instant crimes. The victim's husband testified that a cider jug containing change was missing after the murder, but he could not recall the last time he had seen it in his home. An acquaintance of appellant, Mark Secrest, testified he had been paid approximately $50 appellant owed him on a car purchase. The $50 paid by appellant was in change contained in a black shaving bag along with broken pieces of clear glass.

We have repeatedly held that a conviction may be supported by circumstantial evidence alone. *Hill v. State* (1988), Ind., 517 N.E.2d 784. Appellant has failed to demonstrate any reversible error in the admission of State's Exhibits Nos. 22, 23, 26, 27 or 37.

■ Appellant contends the trial court erred in overruling his oral motion in limine to exclude any evidence of or reference to the alleged anal penetration of the victim. At appellant's first trial, he was granted a directed verdict of acquittal on a charge of Criminal Deviate Conduct. He objected at the instant trial to testimony by pathologist Dr. John Pless concerning trauma to the victim's anus. He argues such testimony subjected him to double jeopardy because the prior deviate conduct charge had been resolved in his· favor.

However, appellant misconstrues the concept of double jeopardy as prohibited by the Fifth Amendment. He argues allowing Dr. Pless's testimony was "to allow evidence on which appellant ha[d] been found not guilty." He was not charged with criminal deviate conduct in the instant trial.

Appellant also argues the testimony of anal penetration violated his due process right to a fair trial because it was irrelevant to the instant charge of rape, yet was highly prejudicial. The record of the first trial reveals the directed verdict was granted as to the criminal deviate conduct charge because Dr. Pless was not able to conclude the anal penetration was perpetrated while the victim was still alive.

■ The autopsy results remain as evidence of occurrences comprising the *res gestae* of the crime at bar. Such evidence of happenings near in time and place which complete the story of the crime are admissible even if tending to establish the commission of other crimes not included among those being prosecuted. *Taylor v. State* (1986), Ind., 496 N.E.2d 561. It thus was not error to admit Dr. Pless's testimony regarding anal penetration of the victim.

■ Appellant contends the trial court erred in admitting over his objection the testimony of Jo Anne Hayes, a Clay County Jail dispatcher who over a monitor heard appellant say to another inmate, "and then Martha said .. No, Billy don't .. please don't." Appellant argues that a videotape recorded by the jail's monitoring system would be the best evidence of what the witness heard and thus her live testimony should have been excluded. He concedes our cases have applied the best evidence rule only to the content of writings, *i.e.*, where the content of a writing is in dispute; yet he argues we should, "in the interests of justice ... review the circumstances present to determine whether this witness's

memory, or even integrity, warrants her testimony."

However, we will not judge credibility on review; to do so would be to invade the province of the jury. *Maynard v. State* (1987), Ind., 513 N.E.2d 641. The trial court did not err in ruling the witness herself was the best evidence of what she had heard and seen.

Appellant also maintains that his remarks made while incarcerated were not part of the *res gestae* of the crime and thus are inadmissible, presumably because as related by witness Hayes they constitute hearsay. As the State asserts, appellant's remarks fall into the category of admissions against interest. When a criminal defendant makes a statement against interest it is admissible. *Washburn v. State* (1986), Ind., 499 N.E.2d 264.

The trial court did not err in admitting the testimony of Jo Anne Hayes regarding appellant's admissions overheard in the Clay County Jail.

Appellant contends there is insufficient evidence to uphold his convictions of rape, robbery, and murder. To support his claim, he discusses discrepancies between various witnesses' testimony and between his first and second trials. This Court will neither reweigh the evidence nor judge the credibility of the witnesses. *Jones v. State* (1988), Ind., 518 N.E.2d 479. Having found above that various evidence was properly admitted, we now find there is sufficient evidence to support the jury's verdict.

Appellant contends the trial court erred in failing "to properly weigh the aggravating and mitigating circumstances, and further failed to ... take into consideration the pre-sentence report" in arriving at a sentence of death. He first argues the trial court "did not in fact consider the jury's recommendation to not impose the death penalty." His counsel has submitted an affidavit alleging he was informed by the trial prosecutor and several jurors that after delivering their sentencing recommendation the jurors were released to the jury room. While there, they were informed by the prosecutor of appellant's suppressed confession, his first trial, and the resulting death sentence, whereupon some of the jurors remarked, in the presence of the trial judge, that had they known of the confession they too would have recommended a death sentence.

Appellant argues the trial court "could not have helped to be prejudiced by these remarks of both the prosecutor and the jurors" and offers as proof of such prejudice the fact the death sentence did not follow the jury's recommendation. We presume to the contrary that the trial court based its sentence upon those considerations stated upon the record. *See Stoner v. State* (1982), Ind., 442 N.E.2d 983. In the case at bar, they are as follows:

"[Mr. Nasser, appellant's trial counsel, asks the court whether it was taking the suppressed confession into consideration.]

THE COURT: I would not take the confession into consideration at this time. I excluded it. If I were going to consider it I would have admitted it.

MR. NASSER: Fine. Thank you.

THE COURT: The record should show then that the court, as required by statute, has considered the jury's recommendation. The law requires me to find the aggravating and mitigating circumstances and at this time I order those findings made a written part of the record. Pursuant to Indiana Code 35–50–2–9 I find that beyond a reasonable doubt, based on the evidence presented at the trial, that William A. Minnick murdered Martha Payne while committing rape and robbery. I specifically find as aggravating circumstances that the decedent was in her own home where she had every right to be secure from William Minnick. I further find as an aggravating circumstance that the crime mutilated her body and defiled her even after death, that the crime was the kind of horrendous crime that the legislature anticipated when it listed rape or robbery as aggravating circumstances. Therefore, I specifically find that the circumstances of the crime, the violence of the attempted electrocution, the strangling, and the knifing are those kinds of aggravating circumstanc-

es. I also find as aggravating circumstance[s] the rape and the after death violation of Martha Payne's body. [The trial court then states it has looked for mitigating circumstances from the statutory list and any others appropriate for consideration, and finds none except appellant's youthful age, *i.e.*, eighteen years old.] ... I find that the aggravating circumstances overwhelmingly outweigh the mitigating circumstances...."

In *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731, *reh'g denied,* 539 N.E.2d 4, we articulated our standard of review in cases where the trial court imposes a death sentence notwithstanding the jury's recommendation to the contrary. In order to override the jury's life recommendation, "the facts justifying a death sentence should be so clear and convincing that virtually no reasonable person could disagree that death was appropriate in light of the offender and his crime." *Id.* at 735. We then vacated the trial court's override of the jury's life recommendation in light of the facts showing Chavez to be markedly less culpable than his codefendant Rondon, for whom the jury had recommended a sentence of death.

In the instant case, however, the evidence at trial revealed that appellant shares his culpability with no one. He alone bears criminal responsibility for this singularly brutal homicide in the course of which the victim was raped, sodomized, stabbed, bludgeoned, strangled, and electrocuted. In light of these circumstances, it seems fair to state that no reasonable person would find a death sentence inappropriate here.

Neither the speculative effect of the jurors' remarks nor the fact of having imposed the death penalty over the jury's recommendation leads us to conclude the trial court improperly failed to consider the jury's recommendation.

■ Appellant next argues the trial court improperly considered statutory aggravating factors from sections other than Ind.Code § 35–50–2–9(b). He claims using factors from Ind.Code § 35–4.1–4–7 (recodified 1983 as Ind.Code § 35–38–1–7), the

section listing factors to consider in determining the length of felony sentences, was error. He is incorrect in this regard. We have previously held that as long as at least one of the aggravating circumstances from the death penalty statute is proven and set forth in the sentencing statement, a trial court may find the existence of other statutory aggravators and consider them in regard to capital sentencing. *Davis v. State* (1985), Ind., 477 N.E.2d 889, *cert. denied,* 474 U.S. 1014, 106 S.Ct. 546, 88 L.Ed.2d 475. The trial court did not consider improper aggravating factors in rendering a sentence of death.

■ Appellant argues the trial court failed to "verify" that she had considered the presentence report by mentioning it during sentencing, and since a presentence investigation report is mandated by Ind. Code § 35–38–1–12, he thus was sentenced to death illegally. His argument is without merit. The record discloses the probation officer who prepared the report testified at the sentencing hearing and was cross-examined by appellant. Appellant clearly had ample opportunity to refute any part of the report he found to be misleading or inaccurate, yet no exception to the report was taken during the hearing. Appellant himself testified at the hearing and thus had opportunity to voice any mitigating factors not included in the report.

Finally, appellant fails to specify that anything contained in the report was overlooked or ignored by the trial court, or that he was prejudiced thereby. The requirements of Ind.Code § 35–38–1–12, which states a defendant must be advised of the results of his presentence investigation, thus were met. The trial court's failure to explicitly refer to the presentence report in her sentencing statement was not error.

The trial court did not err in the process of reaching and rendering a sentence of death.

The trial court is affirmed.

SHEPARD, C.J. and PIVARNIK, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

Appellant contends that it was impermissible for the trial court to consider as aggravating factors anything other than the statutory aggravating circumstances set out in I.C. 35–50–2–9(b), being nine in number at the time of this killing in 1981. Appellant argues that the trial court was in error in applying the standard sentencing procedure's list of aggravating circumstances for enhancing terms of years set forth in I.C. 35–38–1–7, the criteria for sentencing. The attorney general argues that the case of *Davis v. State* (1985), Ind., 477 N.E.2d 889, holds that once the trial court finds that one of the specific aggravating circumstances enumerated in the death sentence statute has been proved, it may then go on and give additional weight to other rational aggravating circumstances which are proved and which would be cognizable under I.C. 35–38–1–7, the general felony sentencing process, but which are not found in I.C. 35–50–2–9(b), the death sentence statute. I do not agree that *Davis* holds this. It does instead hold that once the judge is satisfied that one aggravating circumstance set out in the death statute is pleaded and proved, the court may also give weight to other aggravating circumstances from that same statute which are proved but not charged. Since Judge Chezem gave weight to aggravating circumstances not specified in the death statute when comparing the weight of the mitigating side of the ledger to that of the aggravators, her decision cannot stand. Indiana's statutory system for giving death requires the sentencer to balance the weight of aggravating circumstances enumerated in the death statute against any mitigating circumstances. This is our death sentence procedure and it does not permit the sentencer to consider aggravating circumstances other than those enumerated in the death sentence statute when engaged in the weighing process.

In the foregoing respect, the Indiana statute is unlike the statutes in some other states, where the statutory aggravating circumstances, once proved, provide an open door to a final and basically unfettered discretionary death decision. *See Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In our statute, by contrast, the enumerated aggravating circumstances do not merely play a role in the "definition stage" by narrowing the class of defendants to which the death penalty may properly be given, but they also play a role in the "selection process" by providing weight upon which the death penalty in the individual case must rest, which weight can be offset only by the weight of mitigating circumstances.

The construction of the death statute put forth by appellant is further supported by the language of I.C. 35–50–2–9(d). There it is provided that the jury at the sentencing hearing may consider the evidence at trial and that the defendant may present additional evidence concerning "the aggravating circumstances alleged." The word "alleged" here shows that the search at the sentencing hearing is limited by the allegations set forth in the State's charge, which is itself limited to the statutory list of aggravators, and therefore is not open to other menus of aggravating circumstances found, for example, in the general criteria for felony sentencing, I.C. 35–38–1–7.

The court's findings at sentencing also were that the court was satisfied that appellant did murder the victim. The term "murder" includes both an intentional killing and a knowing killing. Death is appropriate only if the killing is intentional and the aggravating circumstance is the confluence of an enumerated felony with the intentional killing. I.C. 35–50–2–9(b)(1). One might infer that the trial court used the term "murder" to mean an intentional killing; however, I cannot vote to permit the death sentence to be carried out without an express clarification because the finding of an intentional killing is necessary.

Appellant also contends that the evidence of robbery was insufficient. I agree.

Shortly after the crime, appellant was in possession of a lot of change which was in a musty-smelling shaving kit. There was also some broken glass among the coins. The victim's husband testified that he and the victim kept a lot of change in a glass jug in the house and that the jug was there on September 20, 1981, when he travelled to California to do a job. He took no note of the jug again until he noticed that it was missing after the crime, which occurred on October 26, 1981. Between those two dates, the victim was present in the house for substantial periods of time. The victim's billfold was examined at the scene and found to be empty. From this evidence, a rational trier of fact could not conclude to a certainty beyond a reasonable doubt that appellant took the money he had from the presence of victim. The musty bag in which appellant had the coins was not connected to the crime. None of appellant's incriminating admissions contained references to money or a robbery. The broken glass in the bag would tend to support an inference that a glass container holding the coins was broken; however, the evidence as a whole supporting the verdict and the finding of the trial judge, that appellant did rob the victim, is insufficient. On this basis, I would reverse the robbery conviction and also set aside the death sentence.

Following our preliminary remand, it has become clear that the corpus delicti for rape is no longer present. It is no longer to be found as previously thought in inferences from the general violence to the person of the victim together with the presence of hair like appellant's on the victim's pubic region and the presence of secretions like appellant's in the victim's vagina. Now that we know that these last two items must be disregarded as a matter of law, the corpus delicti must be found, if at all, in the remaining evidence material on the point, namely, the general violence done to the person of the victim, and some material from a non-secretor of unknown blood type, deposited there at some unknown time, and in the same location on the rug as some other like material from a blood-type O secretor. The victim's husband was a blood-type O secretor, appellant was a blood-type O non-secretor. Surely this residual of lawful evidence is insufficient to warrant any rational inference that the victim suffered unlawful carnal knowledge at the occasion of her murder. The sole remaining evidence of guilt is the statement of appellant, attributed to him by his girlfriend, who was motivated to testify and repeat the statement out of a desire to save him from the electric chair, which statement was that it was "Ace" who had killed the woman, but that he, the appellant, did rape her.

The evidence of the rape is simply insufficient after excision of the statement of the officer that the hair from the victim's pubic region was similar to appellant's and the statement of Dr. Pless that secretions in the victim's vagina were like those of appellant. In my view, the trial court was in error on remand and should have granted the motion for new trial, set aside the conviction for rape and ordered the defendant discharged on that offense. I would therefore reverse the decision of the trial court, order the convictions for rape and robbery vacated and the death sentence set aside, and require a term of years for the crime of murder to be imposed.

DICKSON, J., concurs.